575 S.E.2d 308

**Charles William HEWITT, Ph.D., Petitioner Below, Appellee,**

v.

**STATE of West Virginia Department of Health and Human Resources, Respondent Below, Appellant.**

**No. 30621.**

Supreme Court of Appeals of West Virginia.

Submitted Nov. 13, 2002.

Decided Dec. 3, 2002.

Concurring and Dissenting Opinion of Justice Starcher Dec. 10, 2002.

Jay T. McCamic, McCamic & McCamic, Wheeling, for the Appellee.

Darrell V. McGraw, Jr., Attorney General, Charleston, Rocco S. Fucillo, Assistant Attorney General, Fairmont, for the Appellant.

ALBRIGHT, Justice:

The West Virginia Department of Health and Human Resources ("DHHR" or the "Department") appeals from the order of the Circuit Court of Ohio County entered on August 16, 2001, directing DHHR to pay Appellee William Hewitt, Ph.D., previously-awarded fees plus interest in connection with Dr. Hewitt's appointment by the trial court to perform psychological services in various juvenile delinquency and child abuse and/or neglect cases. DHHR challenges the underlying individual orders awarding fees to Dr. Hewitt on the grounds that the fees exceeded the rate established by Medicaid for the payment of such services. With regard to those payment orders pertaining to juvenile delin-

quency matters, DHHR asserts that there is no obligation, statutory or otherwise, requiring it to be responsible for the services performed by Dr. Hewitt. Upon our review of this matter, we determine that all orders approving and awarding payment for services performed by Dr. Hewitt in abuse and/or neglect cases that were entered prior to June 7, 2002, the effective date of West Virginia Code § 49–7–33 (2002),[1] shall be paid by DHHR at the rate approved by the trial court. Any payment orders pertaining to abuse and/or neglect matters entered following the effective date of West Virginia Code § 49–7–33, shall be paid by DHHR at the rate established by Medicaid and adopted by DHHR for such services. With regard to fees ordered in connection with juvenile delinquency cases, we determine that the lower court was without authority to require DHHR to be responsible for those costs.

## I. Factual and Procedural Background

On April 10, 2001, Dr. Hewitt filed a petition in the circuit court seeking a rule to show cause as to why DHHR should not be held in contempt for non-payment of previously approved fee orders, which covered services performed by Dr. Hewitt beginning in the Fall of 1996 through March 2001. As support for his contempt petition, Dr. Hewitt cited Rule 27 of the West Virginia Trial Court Rules, arguing that the Court expressly adopted this rule to provide for public funding of expert assistance in child abuse and neglect cases. Observing that Trial Court Rule 27 does not reference payment of fees pursuant to a Medicaid-established rate,

Dr. Hewitt further noted that DHHR never filed any objections to the payment orders he submitted for services rendered.

DHHR, in response to the circuit court's issuance of a rule to show cause,[2] moved to vacate the underlying payment orders on the grounds that, with respect to the payment orders arising from abuse and neglect proceedings, Dr. Hewitt failed to comply with the requirements of Trial Court Rule 27 concerning advance approval and determination of expert fees. As to juvenile delinquency cases, DHHR contends that it has no obligation to pay expert witness fees in such cases, citing the limited responsibility imposed upon the Department by Trial Court Rule 35.05.[3]

The circuit court conducted two evidentiary hearings[4] with regard to payment of Dr. Hewitt's outstanding expert witness fees. During a third hearing that took place on August 2, 2001, the circuit court announced that it was converting the contempt petition into a request for mandamus relief and that it was ruling in favor of Dr. Hewitt. An order granting the relief requested by Dr. Hewitt was entered on August 16, 2001, awarding the principal sum of $71,211.40, as well as interest payments totaling $6,584.36 for a cumulative award of $77,795.76. The trial court denied Dr. Hewitt's request for attorney's fees in connection with the contempt petition.

Through this appeal,[5] DHHR seeks relief from the August 16, 2001, order that directed it to pay the referenced fees to Dr. Hewitt pursuant to a writ of mandamus.

---

1. This statutory provision expressly grants authority to DHHR to set the rate for psychological evaluations and other types of services provided by a health care professional pursuant to the Medicaid-established rate, provided that such a rate exists. *See* W.Va.Code § 49–7–33 (*see* text *infra* at p. 312).

2. The rule to show cause was issued on April 11, 2001.

3. Trial Court Rule 35.05 provides for the compensation of experts in general and provides for only two areas in which DHHR is responsible for the payment of expert witnesses: evaluations performed pursuant to West Virginia Code § 27–6A–1(a)–(e) (1983) (Repl.Vol.2001) (governing

determination of competency of defendant to stand trial and criminal responsibility) and those conducted under authority of West Virginia Code § 62–12–2(e) (1999) (Repl.Vol.2000) (addressing eligibility of certain defendants for probation). In the others instances delineated by the rule, either the county prosecuting attorney's office; the Supreme Court's administrative office; or the Public Defender's office is responsible for the expert witness fees

4. The hearings were held on May 2 and 4, 2001.

5. This Court refused DHHR's first petition for appeal on February 7, 2002. We granted a second petition for appeal on June 4, 2002, allowing DHHR to file the same out of time.

## II. Standard of Review

■■ Because we are reviewing the lower court's issuance of a writ of mandamus, our review is governed by the axiomatic standard that we apply to the issuance of such writs: "A writ of mandamus will not issue unless three elements coexist—(1) a clear legal right in the petitioner to the relief sought; (2) a legal duty on the part of respondent to do the thing which the petitioner seeks to compel; and (3) the absence of another adequate remedy." Syl. Pt. 2, *State ex rel. Kucera v. City of Wheeling,* 153 W.Va. 538, 170 S.E.2d 367 (1969). We proceed to determine whether the lower court erred in issuing a writ of mandamus under the facts of this particular case.

## III. Discussion

We note at the outset of our discussion that budgetary concerns underlie the DHHR's actions concerning non-payment of fees in this matter. DHHR submitted an affidavit to this Court in support of its appeal, wherein the Department indicated that a ninety million dollar deficit is projected for fiscal year 2003. Against this background of looming financial shortages, DHHR informed the Court that during fiscal year 2001 it paid approximately 1.6 million dollars for court-ordered payments, "of which approximately 75% was for treatment, counseling and evaluations." While the Court is not unappreciative of the budgetary constraints facing DHHR, we cannot resolve the issues presented here based on the operating costs of a state agency. Our decision must be grounded in the law, rather than a response to a specific agency's financial woes.

### A. Authority To Establish Fees

DHHR argues that the circuit court was without authority to direct it to pay Dr. Hewitt at a rate higher than it pays other providers of similar services. Since July 1998, DHHR has had in place a policy of paying its medical services providers fees that are consistent with Medicaid-established rates.[6] The Medicaid-approved rate for psychological evaluation services is $182.20. In the subject payment orders at issue, the fee submitted by Dr. Hewitt, and approved by the circuit court, was either $550 or $750, depending on when the services were performed.[7] Although Dr. Hewitt withdrew from being a Medicaid provider in 1997, DHHR contends that it mistakenly believed that he was still a Medicaid provider and thus only entitled to the set fee of $182.20.[8] DHHR states additionally that its reason for not paying the court-ordered fees prior to the filing of the contempt petition "is simply because he [Dr. Hewitt] has billed a higher rate rather than [sic] the Department believes is reasonable under the circumstances compared to what other similarly situated psychologists are paid."

When the initial psychological services were performed by Dr. Hewitt that are the subject of this appeal, the sole authority for awarding expert witness fees in abuse and neglect cases was found in West Virginia Code § 49-6-4 (1984) (Repl.Vol.2001). That statutory provision provides, in pertinent part:

> At any time during proceedings under this article the court may, upon its own motion or upon motion of the child or other parties, order the child or other parties to be examined by a physician, psychologist or psychiatrist, and may require testimony from such expert, subject to cross-examination and the rules of evidence.... *The court by order shall provide for the payment of all such expert witnesses.* If the child, parent or custodian is indigent, such witnesses shall be compensated out of the treasury of the State. ...

*Id.* (emphasis supplied). Under a separate statutory provision, which the State concedes is in need of amending due to the antiquated

---

**6.** The Department acknowledges, however, that "there has [not] been 100% compliance with this payment policy," attributing such non-compliance to instances of court-ordered payments.

**7.** Whereas the current rate charged by Dr. Hewitt for performing court-appointed psychological evaluations is $750, it was previously $550.

**8.** Dr. Hewitt notes, however, that the record contains a letter from DHHR dated May 29, 1997, indicating that Dr. Hewitt was not on the State Medicaid rolls as a provider.

fixed fee, the State is limited to paying only ten dollars for mental and physical examinations performed on juveniles. *See* W.Va. Code § 49–5–4 (1998) (Repl.Vol.2001).

With the adoption by this Court of certain trial court rules effective July 1, 1999, a rule was added that specifically addresses the issue of public funding for experts in child abuse and neglect cases. Trial Court Rule 27.02 provides that:

> The court shall by order establish in advance the reasonable fees and expenses to be paid to an expert. Payment shall be as follows: Upon completion of services by an expert, the court shall, by order, direct the State Department of Health and Human Resources to pay for the expert's evaluation, report writing, consultation, or other preparation; and the court shall, by order, direct payment by the Supreme Court's Administrative Office for the expert's fee and expenses entailed in appearing to testify as a witness.

Under this rule, there is a split of payment responsibility for evaluative services and testimonial services, with the Court being responsible for the latter and DHHR, the former.

Through the efforts of DHHR, a recent statutory enactment—West Virginia Code § 49–7–33—gives DHHR authority to establish the fee schedule for paying health care professionals who provide services in connection with proceedings brought pursuant to article 49, chapters five and six of the West Virginia Code. That provision, which went into effect on June 7, 2002, states as follows:

> At any time during any proceedings brought pursuant to articles five [§§ 49–5–1 et seq.] and six [§§ 49–6–1 et seq.] of this chapter, the court may upon its own motion, or upon a motion of any party, order the West Virginia department of health and human resources to pay for professional services rendered by a psychologist, psychiatrist, physician, therapist or other health care professional to a child or other party to the proceedings. Professional services include, but are not limited to, treatment, therapy, counseling, evaluation, report preparation, consultation and preparation of expert testimony. The West Virginia department of health and human resources shall set the fee schedule for such services in accordance with the Medicaid rate, if any, or the customary rate and adjust the schedule as appropriate. Every such psychologist, psychiatrist, physician, therapist or other health care professional shall be paid by the West Virginia department of health and human resources upon completion of services and submission of a final report or other information and documentation as required by the policies and procedures implemented by the West Virginia department of health and human resources.

W.Va.Code § 49–7–33.

Based on the enactment of West Virginia Code § 49–7–33, DHHR argues that the circuit court's entry of the August 16, 2001, order constitutes a separation of powers issue in that the order disregards the agency's authority to establish the rate for expert fee payments consistent with the Medicaid rate for such services. This argument does not withstand scrutiny because West Virginia Code § 49–7–33 did not go into effect until almost ten months after the entry of the lower court's order. Consequently, all of the individual payment orders that are the collective subject of the August 16, 2001, order were entered well in advance of the effective date of the legislation at issue. Because the underlying matter began as a contempt proceeding, we cannot disregard the fact that the multiple payment orders that underlie the August 16, 2001, order are the orders for which enforcement was initially sought and thus, are the actual orders at issue in the case *sub judice*.

■ A significant and lingering issue, which cannot be resolved today, arises from the conflicting statutory provisions now in effect that address the award of expert fees in abuse and neglect cases. Notwithstanding the enactment of West Virginia Code § 49–7–33 and its grant of authority to DHHR to set rates for expert witnesses, previously established authority still exists for circuit courts to "provide for the payment of all such expert witnesses" in abuse and neglect proceedings. W.Va.Code § 49–6–4. As a result of this continuing authority in the circuit

courts, we do not accept the position of DHHR that it has exclusive authority for the payment of expert fees in abuse and neglect cases under the provisions of West Virginia Code § 49–7–33.[9] Clearly, that provision, when properly invoked,[10] enables the Department to use Medicaid-established rates for the provision of health care services as required under chapter 49, articles five and six, where such rates are available.[11] Critically, however, a circuit court still retains the ultimate authority for entry of all orders directing payment of expert witness fees in abuse and neglect matters. *See* W.Va.Code § 49–6–4.

## B. Authority to Require Payment of Expert Fees

■ Returning to the issue of the enforceability of the orders that are the subject of the August 16, 2001, order, we find that because the payment orders were all for services that preceded the June 7, 2002, effective date of West Virginia Code § 49–7–33 and because the actual payment orders relative to those services were entered before that date, there is no statutory impediment to payment of those orders at the rates provided for in the respective orders. However, all payment orders submitted for services within the scope of West Virginia Code § 49–7–33 that were performed after the statute's effective date, or that were approved for

payment after June 7, 2002, are subject to the payment provisions provided therein.

■ Besides challenging the payment orders on the grounds that such payments exceed the amounts authorized by West Virginia Code § 49–7–33, DHHR raises additional objections to those orders stemming from the preapproval procedure established in Trial Court Rule 27.02. While the parties did not provide us with specifics, some of the underlying payment orders at issue were not preapproved by the trial court regarding the amount of the expert witness fee to be awarded for the evaluative services to be performed by Dr. Hewitt.[12] However, by failing to appeal any of the underlying orders that collectively comprise the subject of the August 16, 2001, order, DHHR has waived its right to challenge the enforceability of those orders. *See* Syl. Pt. 3, *State v. Asbury*, 187 W.Va. 87, 415 S.E.2d 891 (1992) (holding that "[f]ailure to make timely and proper objection ... constitutes a waiver of the right to raise the question thereafter either in the trial court or in the appellate court"); *see also Hustead on Behalf of Adkins v. Ashland Oil, Inc.*, 197 W.Va. 55, 62, 475 S.E.2d 55, 62 (1996) (observing that "Appellant's failure to appeal the final judgment order entered by the circuit court brought finality to that judgment, thereby ending any controversy or adverseness between the parties"); *Ward v. Ward's Heirs*, 50 W.Va. 517,

---

9. DHHR argues that "it has the right as an Executive Branch Agency to determine what its payment obligations are." While we appreciate the Department's contention that it is entitled to control over its monetary obligations, this statement does not realistically reflect the situation presented by the necessary interworkings of the judicial branch and the executive branch in instances of cases involving children who require the services of this state. If DHHR is suggesting that the judicial branch has no right in any instance to set expert fees or to approve such fees, we cannot agree with this proposition.

10. The provisions of West Virginia Code § 49–7–33 do not limit the fees charged by expert witnesses where such witnesses are retained privately. Those statutory provisions only operate as a restriction on the amount that can be charged when DHHR is ordered by the trial court to pay for health care services in connection with matters arising under articles five and six of chapter 49.

11. While one reading of the statute suggests that DHHR may use a "customary rate" where a Medicaid rate is not available, the statute arguably gives the agency the discretion to choose between the Medicaid rate and the "customary rate," due to its use of a disjunctive connective. *See* W.Va.Code § 49–7–33.

12. While the State quantifies the number of non-complying payment orders as "significant," Dr. Hewitt disputes that there are numerous such orders and further indicates that "nearly all" of the orders entered after July 1, 1999, (effective date of Trial Court Rule 27) "were 'pre-approved' by separate order as was the procedure that was used from the Fall of 2000 to date." Because the State failed to assert any objection at the time the orders were submitted for approval based on failure to adhere to trial court rule procedures and because the State also failed to appeal from the entry of any such payment orders on those or other grounds, we find that such objections have been waived.

519, 40 S.E. 472, 473 (1901) (" 'Where a party by his acts or express agreement releases appealable error, he waives all right of appeal' ") (*quoting* 2 Ency. Pl. & Prac. 174, note; 7 Ency. Pl. & Prac. 870). Given the clear failure of the State to challenge the underlying payment orders through means of an appeal, we cannot entertain any non-jurisdictional based challenges to those orders at this time. *See Whitlow v. Board of Educ.,* 190 W.Va. 223, 226, 438 S.E.2d 15, 18 (1993) (recognizing general rule that failure to raise nonjurisdictional issues below precludes appellate consideration of such issues).

■ While we find no impediment to enforcement of the underlying payment orders that are the subject of the August 16, 2001, order which arose in connection with abuse and/or neglect proceedings, we do not find the same to be true with regard to those orders stemming from juvenile delinquency matters. *See* W.Va.Code § 49–6–4. Unlike the authority reposed in the circuit courts by West Virginia Code § 49–6–4 to award expert fees in abuse and neglect proceedings, there is no similar grant of authority to circuit courts for setting expert fees in juvenile delinquency cases. *Cf.* W.Va.Code § 49–5–4 (limiting examining fee in juvenile matters to $10). Accordingly, we cannot uphold the lower court's imposition of payment responsibility on the Department with regard to those expert witness fees submitted by Dr. Hewitt in cases that arose under this state's juvenile delinquency laws.

■ In recognition of the lack of an express funding obligation provided for expert fees in juvenile delinquency cases and pursuant to our inherent authority to manage the courts of this state, this Court will assume financial responsibility in matters arising under this state's juvenile delinquency laws for the fees properly charged by expert witnesses appointed by the trial courts and sub-

sequently approved for payment. Accordingly, the lower court on remand shall identify which of those cases included in the August 16, 2001, order were juvenile delinquency cases [13] and deduct from its award such amounts that are attributable to Dr. Hewitt's approved fees relative to those cases. The payment orders pertaining to those juvenile delinquency cases should then be submitted to this Court's administrative office for purposes of payment.

While our decision to assume responsibility for the expert witness fees in juvenile delinquency matters arises in part due to this Court's recognition that Trial Court Rule 27 is limited in its application to abuse and neglect matters, we wish to address the requirement imposed under Trial Court Rule 27 for advance approval of expert fees. Because the issue of establishing the fees to be charged in advance serves several laudatory purposes, we encourage the trial courts to extend the preapproval requirement imposed by Trial Court Rule 27 to juvenile delinquency matters also. In this fashion, all of the parties will be fully apprised at an early stage of the litigation concerning the fee amount and there should be a consequent reduction in challenges to expert fee awards. Furthermore, we urge the trial courts to be diligent in applying the preapproval requirement of Trial Court Rule 27.02 to both child abuse and neglect matters and to juvenile delinquency matters.[14]

### C. Relief to be Awarded

Because we conclude that the circuit court was acting within its authority in approving the payment orders concerning abuse and/or neglect matters that precede the effective date of West Virginia Code § 49–7–33 and because we find that DHHR has a duty to make those payments, we affirm the lower court's issuance of the writ of mandamus as

---

13. According to exhibit number three that DHHR attached to its second petition for appeal, there appear to be twelve juvenile delinquency matters included in the August 16, 2001, order.

14. We wish to emphasize that, by refusing to set aside those payment orders where preapproval was not obtained, we do not imply any reduced significance to this requirement of securing advance approval of expert fees. Our refusal to

permit this requirement to serve as a means of preventing the enforcement of the underlying payment orders was due to the constraints of the appellate process, rather than being based upon a view that this requirement of approving expert fees in advance is a matter of minor significance, or undeserving of enforcement. *See supra* note 12.

to all those underlying payment orders arising in abuse and/or neglect matters for services provided by Dr. Hewitt that preceded June 7, 2002, provided such orders were entered on or before June 7, 2002. As to any payment orders arising in connection with abuse and/or neglect matters that pertain to services performed by Dr. Hewitt following June 7, 2002, or where such orders were not entered before June 7, 2002, the provisions of West Virginia Code § 49–7–33 are controlling. Based on our conclusion that no authority exists for requiring DHHR to be responsible for the expert fees associated with juvenile delinquency cases, we reverse the lower court's issuance of the writ of mandamus as to all those underlying payment orders arising in connection with juvenile delinquency matters. Those payment orders, as discussed above, shall be forwarded to this Court for payment.

Based on the foregoing, the decision of the Circuit Court of Ohio County entered on August 16, 2001, is affirmed, in part; reversed, in part; and remanded for further proceedings consistent with this opinion.

Affirmed, in part; Reversed, in part; and Remanded.

STARCHER, Justice, concurring in part, and dissenting in part.

(Filed Dec. 10, 2002)

The basic issue in this case, as posed by the DHHR, is whether as a matter of law Dr. Hewitt should be compensated more than other psychologists throughout West Virginia for the court-ordered services that he renders. An ancillary issue is whether the Department of Health and Human Services may budget for such services based upon its medicaid reimbursement rate, or based on figures in whatever amount that may be established by a circuit court, without reference to any statewide controlling guidelines.

I am sympathetic to the DHHR's position on these issues. That is why I am pleased that this Court's opinion recognizes the DHHR's looming financial shortages, and establishes an important limitation on the DHHR's duty to pay expert witness fees in juvenile delinquency cases. And I am pleased that the pre-approval requirement is strongly recognized in the Court's opinion; this process should prevent many future problems.

The decentralized nature of our circuit court system is excellent for certain purposes, but it can come into strong tension with the cost of managing what are in most respects social work and public health matters.

Thus, we have recently gotten away from allowing circuit judges *carte blanche* to require costly, often out-of-state placements for children in crisis. Moreover, courts simply cannot be a rubber-stamp for "have invoice, will travel" experts.

I would therefore find that the lack of fee pre-approval in Dr. Hewitt's cases was a jurisdictional defect that made the orders void, even if they were not immediately appealed.

I am authorized to state that Justice Maynard joins in this separate opinion.