613 S.E.2d 76

**State ex rel. Linda Richmond ARTIMEZ, Acting Administrative Director of the Courts, Petitioner,**

v.

**The Honorable Arthur M. RECHT, Judge of the Circuit Court of Ohio County; Charles William Hewitt, Ph.D.; and West Virginia Department of Health and Human Resources, Respondents**

No. 31873.

Supreme Court of Appeals of West Virginia.

Submitted Jan. 11, 2005.

Decided Feb. 10, 2005.

12.  Judge Zakaib was unavailable due to illness from the period of February 14, 2003, to April 7, 2003.

John M. Hedges, Teresa J. Lyons, Byrne & Hedges, Morgantown, West Virginia, Attorneys for the Petitioners.

Jay T. McCamic, McCamic, Sacco & Pizzuti, P.L.L.C., Wheeling, West Virginia, Attorneys for the Respondent, Charles William Hewitt.

Darrell V. McGraw, Jr., Attorney General, Charleston, Rocco S. Fucillo, Assistant Attorney General, Fairmont, West Virginia, Attorneys for the Respondent, West Virginia Department of Health and Human Resources.

PER CURIAM:

The Acting Administrative Director of the Courts, Linda Richmond Artimez, seeks a writ of prohibition to prevent the enforcement of two orders of the Circuit Court of Ohio County, dated May 14, 2003, and June 17, 2003, directing this Court to pay $484,239.51 for psychological evaluations performed by Dr. Charles William Hewitt in juvenile cases throughout the state of West Virginia. Upon thorough review of the briefs, arguments of counsel, and the record, this Court grants the writ of prohibition to prevent the enforcement of the lower court orders.

I. Factual and Procedural History

In *Hewitt v. State of West Virginia Department of Health and Human Resources,* 212 W.Va. 698, 575 S.E.2d 308 (2002) (hereinafter *Hewitt I* ), this Court addressed the responsibility of the West Virginia Department of Health and Human Resources (hereinafter "DHHR") to pay certain previously awarded fees for Dr. Hewitt's performance of psychological services in juvenile delinquency and child abuse and/or neglect cases. In *Hewitt I,* the DHHR challenged the orders awarding fees to Mr. Hewitt based upon the allegation that the fees exceeded the rate established by Medicaid for payment for such services. 212 W.Va. at 699, 575 S.E.2d at 309. In addressing the issues raised on appeal, the *Hewitt I* Court appropriately recognized the statutory and rule distinctions between cases involving juvenile proceedings under West Virginia Code Chapter 49, Article 5 and cases involving abuse and neglect proceedings under West Virginia Code Chapter 49, Article 6.

A. *Hewitt I:* Abuse and Neglect Cases

With specific regard to abuse and neglect cases, the *Hewitt I* Court resolved that issue on appeal by addressing the DHHR's authority to establish fees for services of experts in abuse and neglect cases and the authority of the trial courts to set and approve fees for such expert services and testimony. This Court held that the DHHR was liable for the payment orders in abuse and neglect cases and that it was required to pay for the services at the rate established by the trial court, unless the order under consideration was entered after June 7, 2002, the effective date of West Virginia Code § 49–7–33 (2002) (Repl.Vol.2004).[1] That statute provides that the DHHR "shall set the fee schedule for such services in accordance with the Medicaid rate, if any, or the customary rate and adjust the schedule as appropriate." West Virginia Code § 49–7–33. Consequently, the *Hewitt I* Court concluded the abuse and neglect fee issue by upholding the fees in un-

---

1. The entire text of West Virginia Code § 49–7–33 provides as follows:

At any time during any proceedings brought pursuant to articles five [§ 49–5–1 et seq.] [juvenile proceedings] and six [§§ 49–6–1 et seq.] [abuse and/or neglect proceedings] of this chapter, the court may upon its own motion, or upon a motion of any party, order the West Virginia department of health and human resources to pay for professional services rendered by a psychologist, psychiatrist, physician, therapist or other health care professional to a child or other party to the proceedings. Professional services include, but are not limited to, treatment, therapy, counseling, evaluation, report preparation, consultation and preparation of expert testimony. The West Virginia department of health and human resources shall set the fee schedule for such services in accordance with the Medicaid rate, if any, or the customary rate and adjust the schedule as appropriate. Every such psychologist, psychiatrist, physician, therapist or other health care professional shall be paid by the West Virginia department of health and human resources upon completion of services and submission of a final report or other information and documentation as required by the policies and procedures implemented by the West Virginia department of health and human resources.

derlying payment orders entered before June 7, 2002, and explaining that the payment orders entered after June 7, 2002, were subject to the statute's provisions regarding the Medicaid rate.[2] 212 W.Va. at 703, 575 S.E.2d at 313.

## B. *Hewitt I:* Juvenile Cases

With specific regard to the twelve orders pertaining to fees in juvenile delinquency matters, the DHHR asserted in *Hewitt I* that no authority, statutory or otherwise, existed requiring it to pay for the services performed by Dr. Hewitt in conjunction with juvenile matters. The services at issue is *Hewitt I* were performed by Dr. Hewitt between 1996 and 2001. Consequently, West Virginia Code § 49–7–33, permitting our trial courts to order the DHHR to pay for experts' services in juvenile matters, was not yet in effect.

■ In syllabus point two of *Hewitt I,* this Court addressed the specific issue of twelve underlying payment orders for juvenile services, entered prior to the effective date of West Virginia Code § 49–7–33, and explained as follows:

> In recognition of the lack of an express funding obligation provided for expert fees in juvenile delinquency cases and pursuant to our inherent authority to manage the courts of this state, this Court will assume financial responsibility in matters arising under this state's juvenile delinquency laws for the fees properly charged by expert witnesses appointed by the trial courts and subsequently approved for payment.

212 W.Va. at 699, 575 S.E.2d at 309.

## C. Remand After *Hewitt I*

Upon remand from *Hewitt I,* Dr. Hewitt submitted numerous additional bills for vari-

ous professional services performed in over 400 juvenile matters lately pending before twenty-nine different circuit judges and one family law master, ultimately resulting in an order by the lower court for payment by this Court in the amount of $484,239.51. This Court has now been requested to issue a writ of prohibition preventing the enforcement of those payment orders.

## II. Standard of Review

■ In syllabus point five of *State ex. rel. Frazier & Oxley, L.C. v. Cummings,* 214 W.Va. 802, 591 S.E.2d 728 (2003), this Court established that "[w]hen a circuit court fails or refuses to obey or give effect to the mandate of this Court, misconstrues it, or acts beyond its province in carrying it out, the writ of prohibition is an appropriate means of enforcing compliance with the mandate." This Court also stated in syllabus point four of *Frazier* that "[a] circuit court's interpretation of a mandate of this Court and whether the circuit court complied with such mandate are questions of law that are reviewed *de novo.*"

■ With regard to the writ of prohibition requested in this case, the appropriate standard of review was explained in syllabus point four of *State ex rel. Hoover v. Berger,* 199 W.Va. 12, 483 S.E.2d 12 (1996), as follows:

> In determining whether to entertain and issue the writ of prohibition for cases not involving an absence of jurisdiction but only where it is claimed that the lower tribunal exceeded its legitimate powers, this Court will examine five factors: (1) whether the party seeking the writ has no

---

**2.** The *Hewitt I* Court also addressed Rule 27.02 of the Trial Court Rules, effective July 1, 1999, providing specific rules for abuse and neglect cases, as follows:

> The court shall by order establish in advance the reasonable fees and expenses to be paid to an expert. Payment shall be as follows: Upon completion of services by an expert, the court shall, by order, direct the State Department of Health and Human Resources to pay for the expert's evaluation, report writing, consultation, or other preparation; and the court shall, by order, direct payment by the Supreme

Court's Administrative Office for the expert's fee and expenses entailed in appearing to testify as a witness.

Under that rule, a fee splitting arrangement is established, whereby the DHHR pays for expert evaluation services and this Court pays for expenses entailed in appearing as a witness. Although this Court in *Hewitt I* encouraged trial courts to apply this arrangement to juvenile matters, Rule 27.02 of the Trial Court Rules is limited in its application to abuse and neglect matters.

other adequate means, such as direct appeal, to obtain the desired relief; (2) whether the petitioner will be damaged or prejudiced in a way that is not correctable on appeal; (3) whether the lower tribunal's order is clearly erroneous as a matter of law; (4) whether the lower tribunal's order is an oft repeated error or manifests persistent disregard for either procedural or substantive law; and (5) whether the lower tribunal's order raises new and important problems or issues of law of first impression. These factors are general guidelines that serve as a useful starting point for determining whether a discretionary writ of prohibition should issue. Although all five factors need not be satisfied, it is clear that the third factor, the existence of clear error as a matter of law, should be given substantial weight.

## III. Discussion

■ Acting Administrative Director Artimez contends that upon remand of *Hewitt I,* the lower court misconstrued the intent and holding of *Hewitt I* and has now improperly submitted bills to this Court for additional services performed by Dr. Hewitt, not among the bills considered in the original *Hewitt I* case and gathered not only from the lower court's Ohio County jurisdiction but also from twenty-eight other circuit judges and a family law master. The underlying payment orders, entered by the various lower courts, were originally entered as early as October 13, 1994, and were aggregated by the Circuit Court of Ohio County in its May 14, 2003, and June 17, 2003, orders, currently under consideration.

This Court's *Hewitt I* decision to assume financial responsibility for "fees properly charged by expert witnesses appointed by the trial courts and subsequently approved for payment" contemplated payment in the twelve cases before us in *Hewitt I* and for testimonial services, as distinguished from evaluative services, in cases covered by West Virginia Code § 49–7–33. *Hewitt I,* 212 W.Va. at 699, 575 S.E.2d at 309. Because the cases covered by the Ohio County Circuit Court orders of May 14, 2003, and June 17, 2003, were not before us in *Hewitt I,* and are

not within the ambit of W.Va.Code § 49–7–33, they are likewise not subject to payment by this Court under the authority of *Hewitt I.*

Trial Court Rule 27.02, as noted above, is limited to abuse and neglect matters. However, it is clear from *Hewitt I* that this Court intended trial courts to apply a like methodology to consideration of fee arrangements in juvenile cases, whether paid by DHHR as evaluative services or paid by this Court as testimonial services.

■ We note that the relief awarded in *Hewitt I* for the benefit of Dr. Hewitt was expressly limited to the twelve payment orders then before the Court. Moreover, the prospective nature of *Hewitt I* as to all other cases appears clearly from our discussion in that opinion of the preferable process for determining such fees to be charged to the court system. We said:

> While our decision to assume responsibility for the expert witness fees in juvenile delinquency matters arises in part due to this Court's recognition that Trial Court Rule 27 is limited in its application to abuse and neglect matters, we wish to address the requirement imposed under Trial Court Rule 27 for advance approval of expert fees. Because the issue of establishing the fees to be charged in advance serves several laudatory purposes, we encourage the courts to extend the preapproval requirement imposed by Trial Court Rule 27 to juvenile delinquency matters also. In this fashion, all of the parties will be fully apprised at an early stage of the litigation concerning the fee amount and there should be a consequent reduction in challenges to expert fee awards. Furthermore, we urge the trial courts to be diligent in applying the preapproval requirement of Trial Court Rule 27.02 to both child abuse and neglect matters and to juvenile delinquency matters.

212 W.Va. at 704, 575 S.E.2d at 314. Thus, the ultimate directive of *Hewitt I* must be read in light of the entire opinion. As this Court has consistently held, " '[t]he statement contained in a syllabus is to be read in the light of the opinion.' *Jones v. Jones,* 133 W.Va. 306, 310, 58 S.E.2d 857, 859 (1949),

*citing Koblegard, Trustee v. Hale,* 60 W.Va. 37, 41, 53 S.E. 793[794] [1906]." *Cupano v. West Virginia Ins. Guar. Ass'n,* 207 W.Va. 703, 708, 536 S.E.2d 127, 132 (2000).

### IV. Conclusion

In light of this clearly prospective discussion in *Hewitt I,* the Court believes that the lower court misconstrued the effect of the opinion. The attempt by the lower court to retroactively include the payment orders now before us within the limited mandate of *Hewitt I* was clearly erroneous. In examining the *Hoover* factors, outlined above, to be considered in the evaluation of a request for a writ of prohibition, we find that the lower court exceeded its legitimate powers and that no other adequate means of relief is available to the party seeking relief. We therefore grant the requested writ of prohibition in accord with *Hoover* and syllabus point 5 of *State ex rel. Frazier & Oxley, L.C. v. Cummings,* 214 W.Va. 802, 591 S.E.2d 728 (2003).

Writ Granted.