629 S.E.2d 748

**In re: BOBBY LEE B.**

**No. 32771.**

Supreme Court of Appeals of West Virginia.

Submitted: Jan. 11, 2006.

Decided: Feb. 21, 2006.

Timothy H. Prentice, Esq., Elkins, for Appellee Bobby Lee B.

Darrell V. McGraw, Jr., Attorney General, C. Carter Williams, Assistant Attorney General, Charleston, for Appellant.

Shannon S. Jones, Assistant Prosecuting Attorney, Elkins, for Appellee State of West Virginia.

PER CURIAM.

Appellant, State of West Virginia Department of Health and Human Services ( "the DHHR"), appeals from an order entered by the Circuit Court of Randolph County requiring the DHHR to pay Thomas R. Adamski, M.D. the sum of $1,000.00 for a four-hour sexual offender evaluation of Bobby Lee B., a juvenile delinquent. For the reasons set forth below, we reverse the circuit court's order.

I.

On April 19, 2004, a juvenile petition was filed charging Bobby Lee B., a fourteen-year-old child, with being a juvenile delinquent for having committed the offense of sexual abuse in the first degree under *W.Va. Code*, 61–8B–7. The alleged victim was five years old and was in the care of Bobby Lee B.'s mother at the time of the abuse.

On May 5, 2004, the case was scheduled for a preliminary hearing. Bobby Lee B. waived his preliminary hearing and entered an *"Alford"*-style plea. The court accepted the plea and adjudicated Bobby Lee B. a delinquent for "sexual abuse in the first degree." [1] Upon agreement of the parties, the court ordered that Bobby Lee B. undergo a sixty-day diagnostic evaluation at the Industrial Home for Youth. The court further ordered "that Dr. Thomas Adamski perform an appropriate sexual offender evaluation of the juvenile and that the Department of Health and Human [Resources] shall pay for services not covered by insurance, at Medicaid rates."

On August 2, 2004, a status/disposition hearing was conducted and the court ordered that Bobby Lee B. be placed at Boys Village, Inc., in Wooster, Ohio.

On September 2, 2004, the court entered an order requiring the DHHR to pay Dr. Thomas R. Adamski, M.D. the sum of $1,000.00 for services performed in the case.[2]

On October 7, 2004, the DHHR filed a motion to vacate the payment order. The DHHR in its motion prayed that the court find that payment at the Medicaid rate would be proper. The DHHR claimed in its motion that it had paid Dr. Adamski the sum of $214.89, which represented payment at the Medicaid rate.

On November 8, 2004, the court conducted a hearing on the DHHR motion. After considering argument of counsel, the court denied the DHHR motion.[3] It is from this November 8 order that DHHR appeals.

---

1. By Order dated the 19th day of July, 2004, the circuit court found that the record should be corrected to reflect that the plea was to sexual abuse in the third degree.

2. Dr. Adamski's statement for services was for: "4.0 Hours of Professional Time @ $250.00 per hour = $1000.00."

3. In the order denying DHHR's motion, the court made the following findings:

1. That the juvenile, Bobby Lee [B.], is now fifteen (15) years of age, and that he was fourteen (14) years of age at the time that he committed the offense for which he was adjudicated delinquent herein, that being sexual assault of a five (5) year old child;

2. That sexual assault of any individual at any age is a very serious matter; however, the Court believes that sexual assault of a child is even more serious;

3. That because of his conduct and the offense that he committed, which would have been a crime if he were an adult, the juvenile had been in detention since approximately April of this year, or at least for a number of months;

4. That the juvenile is presently in a treatment facility in Ohio which costs roughly $3000.00 per month and he is expected to be there for at least a year which will result in a cost per annum roughly of $40,000;

5. That Dr. Adamski regularly does work for this Court, which is not only accepted by

## II.

■ In Syllabus Point 1 of *Chrystal R.M. v. Charlie A.L.*, 194 W.Va. 138, 459 S.E.2d 415 (1995) we held "Where the issue on appeal from the circuit court is clearly a question of law or involving an interpretation of a statute, we apply a *de novo* standard of review." In Syllabus Point 1 of *In re Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996) we also recognized that questions of law are subject to a *de novo* standard of review. We find that the matter at bar is a question of interpretation and application of *W.Va.Code*, 49–7–33, and thus we apply a *de novo* standard of review.

*W.Va.Code*, 49–7–33 states as follows:

§ 49–7–33. **Payment of services.**

At any time during any proceedings brought pursuant to articles five and six of this chapter, the court may upon its own motion, or upon a motion of any party, order the West Virginia department of health and human resources to pay for professional services rendered by a psychologist, psychiatrist, physician, therapist or other health care professional to a child or other party to the proceedings. Professional services include, but are not limited to, treatment, therapy, counseling, evaluation, report preparation, consultation and preparation of expert testimony. The West Virginia department of health and human resources shall set the fee schedule for such services in accordance with the Medicaid rate, if any, or the customary rate and adjust the schedule as appropriate. Every such psychologist, psychiatrist,

physician, therapist or other health care professional shall be paid by the West Virginia department of health and human resources upon completion of services and submission of a final report or other information and documentation as required by the policies and procedures implemented by the West Virginia department of health and human resources.

■ When interpreting statutes we have held:

When a statute is clear and unambiguous and the legislative intent is plain, the statute should not be interpreted by the courts, and in such case it is the duty of the courts not to construe but to apply the statute. Syllabus Point 5 of *State v. General Daniel Morgan Post No. 548, V.F.W.*, 144 W.Va. 137, 107 S.E.2d 353 (1959).

From our examination of *W.Va.Code*, 49–7–33, we find that the language therein relating to payment for professional services in both abuse and neglect cases and delinquency cases is governed by these *Code* provisions. We further find that the following provision is clear and unambiguous and that the legislative intent is clear:

The West Virginia department of health and human resources shall set the fee schedule for such services in accordance with the Medicaid rate, if any, or the customary rate and adjust the schedule as appropriate.

*W.Va.Code*, 49–7–33 (2002), in part.

The payment of expert witnesses in abuse and neglect and delinquency cases has been discussed by this Court in two prior cases,

the Court and respected, but also accepted by most if not all members of the bar that practice before this Court;

6. That not only does Dr. Adamski do a thorough and excellent evaluation, he also does it promptly which is important to the Court and the parties;

7. That a psychological or psychiatric evaluation is of huge significance to the Court in deciding what to do with this youth, when in essence the Court is making a $40,000 decision to try and treat this youth so that he does not sexually assault another child;

8. That the State [Department] has suggested that the statute [§ 49–7–33] only permits the payment of $214.00 for the evaluation completed by Dr. Adamski, that being the applicable medicaid rate;

9. That the Court believes, however, that you generally get what you pay for, and that the Court would be very reluctant to make a $40,000 per annum decision which perhaps involves the sexual assault of young children on a $214.00 evaluation;

10. That the Court rather believes that it can make the best decision based upon a thorough evaluation report which the Court has received in this matter, and the Court does not believe that it can obtain a thorough and prompt evaluation at the amount represented by the Department; and,

11. That the Court believes it has inherent power to take such action as it deems appropriate to have this juvenile evaluated and perhaps prevent the sexual assault of young children.

namely *Hewitt v. State Dept. of Health and Human Resources*, 212 W.Va. 698, 575 S.E.2d 308 (2002) ("*Hewitt I*") and *State ex rel. Artimez v. Recht*, 216 W.Va. 709, 613 S.E.2d 76 (2005) (Per Curiam) ("*Hewitt II*").

In *Hewitt I*, 212 W.Va. at 703, 575 S.E.2d at 313, the Court did not apply the provision of *W.Va.Code*, 49–7–33, because the payment issues in that case predated the effective date of the statute.[4] In *Hewitt I*, the Court observed in footnote 10, however, as follows:

> The provisions of West Virginia Code § 49–7–33 do not limit the fees charged by expert witnesses where such witnesses are retained privately. Those statutory provisions only operate as a restriction on the amount that can be charged when DHHR is ordered by the trial court to pay for health care services in connection with matters arising under articles five and six of chapter 49.[5]

In *Hewitt II*, 216 W.Va. at 711–712, 613 S.E.2d at 78–79, we further discussed *Hewitt I* and the application of *W.Va.Code*, 49–7–33 and stated as follows:

> This Court held that the DHHR was liable for the payment orders in abuse and neglect cases and that it was required to pay for the services at the rate established by the trial court, unless the order under consideration was entered after June 7, 2002, the effective date of West Virginia Code § 49–7–33 (2002) (Repl.Vol. 2004). [FN1] That statute provides that the DHHR "shall set the fee schedule for such services in accordance with the Medicaid rate, if any, or the customary rate and adjust the schedule as appropriate." West Virginia Code § 49–7–33. Consequently, the *Hewitt I* Court concluded the abuse and neglect fee issue by upholding the fees in underlying payment orders entered before June 7, 2002, and explaining that the payment orders entered after June 7, 2002, were subject to the statute's provisions regarding the Medicaid rate. [FN2] 212 W.Va. at 703, 575 S.E.2d at 313

In the instant case the payment order is for professional services performed in a juvenile delinquency proceeding as opposed to an abuse and neglect proceeding. As observed in *Hewitt I* and *Hewitt II*, the payment restrictions apply equally to abuse and neglect cases as they do in delinquency cases. Therefore, the payment order in this case requires the application of *W.Va.Code*, 49–7–33.

 Consistent with the discussion in *Hewitt I* and *Hewitt II* and the clear and unambiguous language of *W.Va.Code*, 49–7–33, we conclude that the services provided by Dr. Thomas R. Adamski are payable at the Medicaid rate. We make no determination, however, as to whether or not the amount asserted by the DHHR as the proper amount to be paid to Dr. Adamski, to-wit: $214.89, is a correct application of the Medicaid rate in this case.[6]

### III.

Based upon the forgoing, we reverse the Circuit Court of Randolph County.

Reversed.

4. The provisions of *W.Va.Code*, 49–7–33 went into effect on June 7, 2002.

5. Article five relates to "Juvenile Proceedings" and article six relates to "Procedure in Cases of Child Neglect and Abuse."

6. If there is a difficulty in obtaining specialized court services because of the application of Medicaid rates, *W.Va.Code*, 49–7–33 clearly provides the opportunity for the DHHR to address the problem by adopting rates other than the Medicaid rates.