489 S.E.2d 281

**WEST VIRGINIA DEPARTMENT OF HEALTH AND HUMAN RESOURCES ex rel. Brenda WRIGHT, Social Service Worker, Petitioner Below, Appellee**

v.

**SCOTT C. and Amanda J., Respondents Below, Appellants**

**Leslie J., Brenda J., Tina C., Homer J., the Putative Father of Scott C., and Any Unknown Putative Father of Scott C., Respondents Below, Appellees.**

No. 24007.

Supreme Court of Appeals of West Virginia.

Submitted June 3, 1997.

Decided June 11, 1997.

Darrell V. McGraw, Jr., Attorney General, Joanna Bowles, Assistant Attorney General,

Charleston, for the Department of Health and Human Services.

Lisa F. White, Guardian Ad Litem for Scott C. and Amanda J., Huntington.

Robert E. Wilkinson, Chief Public Defender, Alvie E. Qualls, II, Public Defender, Huntington, for Leslie J. and Brenda J.

PER CURIAM.

In this abuse and neglect case, the Circuit Court of Cabell County denied a motion to reconsider the dismissal of the infant child, Amanda J., from an abuse and neglect proceeding concerning Scott C., an abused child residing in the same home as Amanda J.[1] On appeal, the guardian ad litem for the infant children maintains that the circuit court erred in refusing to conduct an evidentiary hearing concerning Amanda J. and in failing to conduct a disposition hearing concerning Scott C. Because the circuit court erred in both these matters, we reverse the decision of the circuit court and remand the case for action consistent with this opinion.

## I.

### Facts and Background

On April 1, 1996, both Scott C. (date of birth, July 22, 1984) and Amanda J. (date of birth, September 29, 1990) were living in the home of Brenda J. and Leslie J., the natural parents of Amanda J. Scott C., who is a cousin of Amanda J., had been living with Brenda J. and Leslie J., his aunt and uncle, since he was an infant. Tina C. is the natural mother of Scott C., and Homer J. is the putative father of Scott C.

On April 1, 1996, Brenda Wright, a Social Service Worker with the West Virginia Department of Health and Human Resources (the "Department") filed a petition in the circuit court alleging that Scott C. had been sexually abused by a male relative who lived about a block away. The petition also alleged that Amanda J., while being examined at the request of the Department, told a

nurse that her father, Leslie J., had "done to her what he had done to Scott." Because of the allegations of abuse and neglect, the children were removed from their home and placed in the Department's custody. Lisa F. White, Esq., was appointed guardian ad litem for the children.

After an April 23, 1996 hearing (order entered May 10, 1996), physical custody of the children was returned to Brenda J. and Leslie J., but legal custody remained with the Department. An amended petition was filed by the Department on April 25, 1996 alleging that Brenda J. and Leslie J. failed to protect the children.

On July 1, 1996, after several delays, a probable cause hearing was held. Evidence was presented that Scott C. had been abused by a relative who lived in the neighborhood. A social worker for the Department testified that Brenda J. and Leslie J. were taking action to keep Scott C. away from the alleged abuser. The circuit court was informed that Leslie J. was no longer living with Brenda J. Based on the evidence presented, the abuse case regarding Scott C. against Brenda J. and Leslie J. was dismissed. An adjudicatory hearing regarding the abandonment of Scott C. by his natural parents was set.

Amanda J. was not mentioned in the July 1, 1996 motion for probable cause. By order entered on July 17, 1996, the circuit court found no evidence that Amanda J. was abused or neglected and dismissed the petition concerning Amanda J.

On August 19, 1996, due to the abandonment of Scott C. by his natural parents, the circuit court terminated their parental rights. Brenda J. was given temporary custody of Scott C. "until such time as the West Virginia Department of Health and Human Resources conducts an investigation of this home." At the conclusion of the hearing, the circuit court declined to set a date for a disposition hearing, and the record does not indicate that such a hearing was held.[2]

---

1. We follow our traditional practice in cases involving sensitive facts by using initials to identify the parties rather than their full names. *See Phillip Leon M. v. Greenbrier County Bd. of Educ.,*

199 W.Va. 400, 484 S.E.2d 909 (1996); *In re Katie S.,* 198 W.Va. 79, 479 S.E.2d 589 (1996).

2. During oral argument, the guardian ad litem and counsel for the Department said that Scott

On October 21, 1996 after the guardian ad litem obtained some new evidence from Amanda J.'s teacher indicating that Amanda J. was having substantial problems at school, the guardian ad litem filed a motion requesting reconsideration of the July 1, 1996 order dismissing Amanda J. from the abuse and neglect petition.[3] On November 4, 1996, a hearing was held during which the guardian ad litem requested the circuit court hold an evidentiary hearing on the matter so that she could present evidence. Counsel for the Department supported the motion by saying "we think the motion seeks appropriate relief, the motion of the guardian." The motion was opposed by counsel for Brenda J. and Leslie J. When the guardian ad litem requested a transcript of the hearing, the circuit court indicated that the guardian ad litem had to pay for the transcript, which she agreed to do.[4] By order entered on November 18, 1996, the circuit court denied the guardian ad litem's motion to reconsider.

On appeal, the guardian ad litem maintains that the circuit court erred by: (1) failing to hold an evidentiary hearing to consider evidence supporting her motion to reconsider Amanda J.'s dismissal from the abuse and neglect petition; (2) failing to set a timely disposition hearing on Scott C.; and (3) requiring the guardian ad litem to pay for the hearing transcript.

C. is currently in the Cammack Children's Home and that no disposition hearing has been held. Amanda J. remains in the home with her mother Brenda J., but Leslie J. no longer lives in the home.

Although counsel for the Department did not file a brief in this matter, by letter dated May 8, 1997, the Department indicated that during the lower court proceedings, the Department "stated that the guardian's motion sought the appropriate relief."

We note that counsel for the Department appeared at oral argument and was able to respond to several of the concerns of this Court. A written brief by the Department outlining why the Department supported the guardian ad litem's motion would have assisted the Court in understanding the Department's position. We continue to encourage all parties, including the Department, to file briefs in such matters.

3. During oral argument, the guardian ad litem indicated that in addition to the evidence attached to her appeal petition, namely, Amanda J.'s medical report of March 29, 1996 and school

## II.

### *Discussion*

### A.

### *Standard of Review*

On appeal, this Court applies a three-pronged standard of review. We review a circuit court's findings of fact under a clearly erroneous standard; questions of law and statutory interpretation are reviewed *de novo*; and a circuit court's final order and ultimate resolution is reviewed under an abuse of discretion standard. Syllabus Point 2 of *In re Katie S., supra*, note 2 states the standard of review in abuse and neglect cases:

"Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite

materials, including a October 30, 1996 letter from Amanda J.'s teacher, she had additional evidence to present.

4. The following exchange occurred during the November 4, 1996 hearing concerning a transcript of the hearing:

MS. WHITE: Your Honor, at this time can I request that I have a copy of the transcript of this hearing?

THE COURT: Upon proper arrangements.

MS. WHITE: And I'll prepare an order to that effect.

THE COURT: With the reporter. The state supreme court in their wisdom, I believe, have indicated they wouldn't pay for—is this one of the ones? And, therefore, you will need to find out how to get the good graces of my reporter or you may wish to pay.

MS. WHITE: Your Honor, I would wish to pay and—

THE COURT: And you could get repaid.

MS. WHITE: No, they won't repay me either. But I'll pay that.

and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syllabus Point 1, *In Interest of Tiffany Marie S.,* 196 W.Va. 223, 470 S.E.2d 177 (1996).

*See* Syllabus Point 4, *Burgess v. Porterfield,* 196 W.Va. 178, 469 S.E.2d 114 (1996) (applying a three-pronged standard of review in civil cases).

Evidence of abuse and neglect must be clear and convincing. *W.Va.Code* 49–6–2(c) [1996] provides, in pertinent part, that "[t]he findings must be based upon conditions existing at the time of the filing of the petition and proven by clear and convincing proof." *See* Syllabus Point 3, *In re Jeffrey R.L.,* 190 W.Va. 24, 435 S.E.2d 162 (1993) ("Parental rights may be terminated where there is clear and convincing evidence" in appropriate circumstances).

■ In applying this blend of deferential-plenary standards of review, this Court's primary goal and focus must be on the health and welfare of the children. Syllabus Point 3 of *Katie S.* states:

Although parents have substantial rights that must be protected, the primary goal in cases involving abuse and neglect, as in all family law matters, must be the health and welfare of the children.

We begin by considering the circuit court's denial of the guardian ad litem's motion to reconsider the dismissal of Amanda J. without affording the guardian the opportunity to present evidence.

## B.

### *Motion to Reconsider—Amanda J.*

■ The guardian ad litem maintains that the circuit court erred in denying her the opportunity to present evidence in support of her motion to reconsider the dismissal of the abuse and neglect petition concerning Amanda J. Amanda's parents, Brenda J. and Leslie J., maintain that because the findings must be based on conditions existing at the time of the petition, new evidence requires a new petition.

■ Guardians ad litem must be afforded a meaningful opportunity to represent fully the infant children involved in abuse and neglect cases. This Court has consistently recognized the duties and responsibilities of guardians ad litem and has rejected the imposition of "unreasonable limitations upon the function of guardians ad litem in representing their clients...." *In re Christina L.,* 194 W.Va. 446, 453, 460 S.E.2d 692, 699 (1995). In Syllabus Point 4 of *Christina L.,* we stated:

"Each child in an abuse and neglect case is entitled to effective representation of counsel. To further that goal, *W.Va.Code,* 49–6–2(a) [1992] mandates that a child has a right to be represented by counsel in every stage of abuse and neglect proceedings. Furthermore, Rule XIII of the *West Virginia Rules for Trial Courts of Record* provides that a guardian *ad litem* shall make a full and independent investigation of the facts involved in the proceeding, and shall make his or her recommendations known to the court. Rules 1.1 and 1.3 of the *West Virginia Rules of Professional Conduct,* respectively, require an attorney to provide competent representation to a client, and to act with reasonable diligence and promptness in representing a client." Syllabus Point 5, in part, *In re Jeffrey R.L.,* 190 W.Va. 24, 435 S.E.2d 162 (1993).

The right to the opportunity to be heard is also stated in *W.Va.Code,* 49–6–2(c) [1996], which provides, in pertinent part:

In any proceeding pursuant to the provisions of this article, the party or parties having custodial or other parental rights or responsibilities to the child shall be afforded a meaningful opportunity to be heard, including the opportunity to testify and to present and cross-examine witnesses.

■ In this case, we note that Amanda J. was living in the home with Scott C., a child determined to have been the victim of abuse. In Syllabus Point 2 of *Christina L.,* we indicated that children living in the home with abused children were at substantial risk of

abuse. Syllabus Point 2 of *Christina L.* states:

> Where there is clear and convincing evidence that a child has suffered physical and/or sexual abuse while in the custody of his or her parent(s), guardian, or custodian, another child residing in the home when the abuse took place who is not a direct victim of the physical and/or sexual abuse but is at risk of being abused is an abused child under W.Va.Code, 49–1–3(a) (1994).

Because of the relationship between the children, the circuit court should have been alerted to the possibility that Amanda J. might be abused and should have afforded the child every opportunity to insure her health and safety.

█ We agree that "findings [of abuse and neglect] must be based upon conditions existing at the time of the filing of the petition and proven by clear and convincing proof." *W.Va.Code,* 49–6–2(c), in part. But without any hearing of the evidence, any findings that the evidence either did or did not relate to conditions existing at the time of the filing or did or did not provide clear and convincing proof is without any basis. In Syllabus Point 3 of *Christina L.,* we declined to speculate on the kind or type of evidence needed to provide "clear and convincing proof" by stating:

> "'W.Va.Code, 49–6–2(c) [1980], requires the State Department of Welfare [now the Department of Health and Human Resources], in a child abuse or neglect case, to prove "conditions existing at the time of the filing of the petition ... by clear and convincing proof." The statute, however, does not specify any particular manner or mode of testimony or evidence by which the State Department of Welfare is obligated to meet this burden.' Syllabus Point 1, *In Interest of S.C.,* 168 W.Va. 366, 284 S.E.2d 867 (1981). Syllabus Point 1, *West Virginia Department of Human Services v. Peggy F.,* 184 W.Va. 60, 399 S.E.2d 460

(1990). Syllabus Point 1, *In re Beth,* 192 W.Va. 656, 453 S.E.2d 639 (1994)."

*In* accord Syllabus Point 1, *In re Joseph A.,* 199 W.Va. 438, 485 S.E.2d 176 (1997).

In this case, the circuit court should have afforded Ms. White, the guardian ad litem representing the infant child, "a meaningful opportunity to be heard" as required by *W.Va.Code,* 49–6–2(c) [1996]. We find that the circuit court erred in denying Ms. White an evidentiary hearing in which she could present the additional evidence she had obtained concerning the infant child and we remand this case with directions to hold such a hearing as soon as possible. In any event, the evidentiary hearing must be held within twenty (20) calender days of the filing date of this opinion.

### C.

*Disposition Hearing—Scott C.*

█ The guardian ad litem also alleges that the circuit court erred in failing to schedule and hold a disposition hearing concerning Scott C. The circuit court at the August 19, 1996 adjudicatory hearing ordered the Department to perform a home study of Brenda J., the aunt with whom he was living, with the hearing to be set when the home study was completed. At oral argument before this Court, the parties agreed that the home study had not been done and that no disposition hearing has been scheduled for Scott C. *See* note 2 for the current living arrangement of Scott C.

Counsel for Brenda J. and Leslie J. maintain that this Court should not apply the 60-day standard for setting a disposition hearing found in Rule 32 of the new *Rules of Procedure for Child Abuse and Neglect Proceedings,* adopted December 5, 1996, effective January 1, 1997.[5]

Although the time limits of Rule 32 were not in effect until after the circuit court's August 19, 1996 decision, we are concerned about the almost ten-month delay in this

---

**5.** Rule 32 [1997] of the *Rules of Procedure for Child Abuse and Neglect* provides, in pertinent part:

> (a) *Time Frame.*—The disposition hearing shall commence within forty-five (45) days of the

entry of the final adjudicatory order unless an improvement period is granted pursuant to W.Va.Code § 49–6–12(b) and then no later than sixty (60) days.

case. In Syllabus Point 1, in part, *In re Carlita B.*, 185 W.Va. 613, 408 S.E.2d 365 (1991), we recognized that "[u]njustified procedural delays wreak havoc on a child's development, stability and security." In *Christina L.*, 194 W.Va. at 455, 460 S.E.2d at 701, we criticized the delay in considering abandonment because such delay "leaves the status of the children dangling ... in 'No Man's Land'...." *See Katie S.*, 198 W.Va. at 86, 479 S.E.2d at 596.

▮ The need for prompt resolution of abuse and neglect cases was recognized by the Legislature in *W. Va.Code*, 49–6–2(d) [1996], which provides, in pertinent part:

Any petition filed and any proceeding held under the provisions of this article shall, to the extent practicable, be given priority over any other civil action before the court, except proceedings under article two-a [§ 48–2A–1 et seq.], chapter forty-eight of this code and actions in which trial is in progress.

Syllabus Point 1, in part, *Carlita B.* states:

Child abuse and neglect cases must be recognized as being among the highest priority for the courts' attention. Unjustified procedural delays wreak havoc on a child's development, stability and security.

*In accord* Syllabus Point 3, *In re Jonathan G.*, 198 W.Va. 716, 482 S.E.2d 893 (1996).

In this case, we find that the circuit court erred in failing to deal promptly with the disposition hearing of Scott C. Although *W.Va.Code*, 49–6–5(a) [1996] requires the Department to file a permanency plan for the child, the circuit court needs to set a time frame for final disposition so that the child does not remain indefinitely in "No Man's Land." On remand, the circuit court should set a disposition hearing on Scott C., as soon as possible; in any event, the disposition hearing must be held within twenty (20) calender days of the filing date of this opinion.

### D.

#### *Transcripts*

▮ The guardian ad litem's final assignment of error concerns the circuit court requirement that she pay for a transcript of the proceedings. In their brief, Counsel for Brenda J. and Leslie J., who are the Chief Public Defender and a Public Defender for Huntington, indicated that "John R. Rogers, Director of the West Virginia Public Defender Services, has confirmed that he interprets West Virginia Code § 29–21–13a as requiring him to pay for official transcript costs for abuse and neglect proceedings when they are approved as part of the voucher signed by the presiding judge." This policy is to remain in effect until Senate Bill 335 (*W.Va.Code*, 51–7–8 (1997)) is effective. Senate Bill 335 provides that such costs shall be paid out of the appropriation of this Court.[6]

We note that *W.Va.Code*, 49–6–2(e) [1996] provides for a transcript to be furnished for indigent persons without cost.[7] Rule 6 of the *Manual for Official Court Reporters of the West Virginia Judiciary* (Administrative Office of the West Virginia Supreme Court of Appeals), Promulgated October 30, 1984,

---

6. Senate Bill 335 provides, in pertinent part:

In any proceeding held pursuant to article five or six, chapter forty-nine of this code in which an indigent respondent or his or her counsel has filed a written request, in the manner prescribed by the supreme court of appeals, evidencing an intent to appeal a decision of a circuit court in the proceeding, the court, upon presentation of a written request, presented within thirty days after the entry of the order sought to be appealed, shall authorize and direct the court reporter to furnish a transcript of the testimony of the proceeding or the part or parts thereof that have specifically been requested.

The court, after being sufficiently satisfied by the reasonableness of the voucher or claim submitted for payment of the cost of preparing the transcript, shall certify the cost to the state auditor, who shall, in a timely manner, pay the court reporter's fee from appropriations to the supreme court of appeals.

7. *W.Va.Code*, 49–6–2(e) [1996] provides, in pertinent part:

The evidence shall be transcribed and made available to the parties or their counsel as soon as practicable, if the same is required for purposes of further proceedings. If an indigent person intends to pursue further proceedings, the court reporter shall furnish a transcript of the hearing without cost to the indigent person if an affidavit is filed stating that he cannot pay therefor.

Amended October 18, 1996 ("Official Court Reporter Manual"), states:

> Transcripts of less than 100 pages in length requested by an indigent party for purposes of appealing a determination in a civil child abuse and neglect proceeding will be produced by the court reporter in accordance with the provisions of this Section governing production of transcripts in civil appeals.

The Official Court Reporter Manual also contains an "Transcript Pay Statement/Administrative Order" in Appendix C, which indicates the procedures to be followed for payment.

In this case, the infant children, represented by Ms. White as their guardian ad litem, are indigent persons and a transcript should have been furnished without requiring the guardian ad litem to pay from her own funds. We find that the circuit court erred in requiring the guardian ad litem for the infant indigent children to pay personally for the transcript necessary for this appeal.

For the above-stated reasons, we reverse the decision of the Circuit Court of Cabell County and remand this case for further prompt proceedings consistent with this opinion; said proceedings must be conducted within twenty (20) days of the filing date of this opinion.

Reversed and remanded, with directions.