700 S.E.2d 815

## In re CHEVIE V.

### No. 35443.

Supreme Court of Appeals of West Virginia.

Submitted Sept. 8, 2010.

Decided Sept. 23, 2010.

Darrell V. McGraw, Jr., Attorney General, Charleston, WV, Katherine M. Bond, Assistant Attorney General, White Hall, WV, for Appellant, West Virginia Department of Health and Human Resources.

J.K. Chase, IV, Moundsville, WV, Guardian ad Litem for the Minor Child, Chevie V.

DAVIS, Chief Justice:

The appellant herein, the West Virginia Department of Health and Human Resources (hereinafter referred to as "DHHR"), appeals from orders entered July 30, 2009, and August 24, 2009, by the Circuit Court of Marshall County. Through its order of July 30, 2009, the circuit court required the DHHR to pay the costs associated with the expert witness retained by the minor child's mother in the underlying abuse and neglect proceeding. In its August 24, 2009, order, the circuit court upheld its earlier ruling, denying the DHHR's motion for relief therefrom. On appeal to this Court, the DHHR assigns error to the circuit court's order and contends that the subject expert witness fees

and expenses should be assessed to the West Virginia Public Defender Corporation (hereinafter referred to as "Public Defender Corporation"). Alternatively, the DHHR contends that if it is found to be the party responsible for paying the mother's expert witness costs, the DHHR, itself, should be permitted to establish the fee schedule for such payment. Upon a review of the parties' arguments, the record designated for appellate consideration, and the pertinent authorities, we affirm, in part, and reverse, in part, the decisions of the Marshall County Circuit Court and remand this case for further proceedings consistent with this opinion. Specifically, we affirm the circuit court's rulings insofar as the lower court required the DHHR to pay the mother's expert witness costs. However, we reverse the circuit court's orders to the extent that the lower court required the DHHR to make such payment in accordance with the fee schedule adopted by the Public Defender Corporation. Accordingly, we remand this case to the circuit court for a recalculation of the allowable expert witness fees in accordance with the DHHR's fee schedule set forth in W. Va. Code § 49–7–33 (2002) (Repl.Vol.2009).

## I.

## FACTUAL AND PROCEDURAL HISTORY

The underlying abuse and neglect case commenced in November 2008 with the DHHR's filing of a petition alleging that the minor child, Chevie V.,[1] had been abused and/or neglected by her mother, her father, and/or her mother's live-in boyfriend. Specifically, marks had been discovered on Chevie's neck spelling out the word "WIMP," which marks were suspected to be caused by burns from a lit cigarette.[2] The petition alleged that Chevie's mother had placed these marks on Chevie's neck.[3] Chevie's

---

1. In keeping with our longstanding practice of referring to children in cases involving sensitive facts by their last initials rather than by their full names, we will refer to Chevie by her last initial. *See, e.g., In re Abbigail Faye B.*, 222 W.Va. 466, 470 n. 1, 665 S.E.2d 300, 304 n. 1 (2008); *In re Cesar L.*, 221 W.Va. 249, 252 n. 1, 654 S.E.2d 373, 376 n. 1 (2007); *In re Clifford K.*, 217 W.Va. 625, 630 n. 1, 619 S.E.2d 138, 143 n. 1 (2005).

2. Chevie was six years old when the abuse and neglect petition was filed in November 2008.

3. An amended petition filed in December 2008 included findings of several additional marks on Chevie's back, arm, and ankles.

mother denied that she had harmed her child and disputed that the marks were cigarette burns.[4]

In January 2009, Chevie's mother moved the circuit court to grant her permission to hire an expert to refute the DHHR's allegations as to the nature and origin of Chevie's injuries. This request to hire an expert was conditioned upon the DHHR's use of an expert to prove its allegations regarding the source of Chevie's injuries; if the DHHR did not intend to use an expert witness, Chevie's mother indicated that she would withdraw her request. In her motion, Chevie's mother also indicated that the law is not clear as to who is responsible for paying for a parent's expert witness in an abuse and neglect proceeding but that, based upon her research and inquiries, the Public Defender Corporation was believed to be the responsible party.[5] By order entered February 23, 2009, the circuit court granted Chevie's mother's request to obtain an expert witness and directed that "said expert witness must accept the fee as set forth by [the] Public Defender Corporation fee schedule." Thereafter, Chevie's mother retained Dr. Mary Carrasco as her expert witness and requested the circuit court to approve her as her expert witness and to approve her payment by the Public Defender Corporation, both of which the court ordered on February 27, 2009:

> Accordingly, it is ORDERED that Respondent Mother's expert, Dr. Mary Carrasco, shall be paid by and from [the] West Virginia Public Defender Corporation at an hourly out of court fee of $325.00 per hour and in court fee of $350.00 per hour; it is further
>
> ORDERED that said expert's mileage shall be paid at 44.5 cents per mile and hotel and car rental with itemized invoices attached[.]

■ During the course of the abuse and neglect proceedings, the mother's attorney requested reimbursement of the fees and expenses she had paid to the mother's expert witness. By order entered July 30, 2009, the circuit court "ORDER[ED] that the West Virginia Department of Health and Human Resources reimburse [Chevie's mother's attorney] the amount of $6,810.63 paid by [the mother's attorney] for services and expenses rendered and incurred by Dr. Mary Carrasco[.]" The DHHR objected to this ruling, which contradicted the court's earlier order charging the Public Defender Corporation with payment of the mother's expert witness and, accordingly, filed a "Motion for Reconsideration of Payment Order."[6] By order entered August 24, 2009, the circuit court upheld its earlier order directing the DHHR to pay the fees and expenses incurred by the mother's expert witness and amended its February 27, 2009, order charging such costs to the Public Defender Corporation. Thereafter, the circuit court granted the DHHR's request for a determination pursuant to Rule 54(b) of the West Virginia Rules of Civil

---

4. Following the filing of the initial petition, Chevie's mother was charged with six counts of malicious assault, five counts of child abuse, and one count of child abuse resulting in injury in connection with Chevie's injuries. Chevie's mother currently is awaiting trial on these charges.

5. Chevie's mother was represented by appointed counsel during the underlying abuse and neglect proceeding, but said counsel was not provided by the Public Defender Corporation.

6. The DHHR's motion was in the nature of one filed pursuant to West Virginia Rule of Civil Procedure 60(b) whereby a party requests relief from a prior order or judgment of the court. *See* W. Va. R. Civ. P. 60(b) (permitting circuit court to relieve party from court's judgment or order for variety of reasons). Despite the DHHR's designation of its motion as a "motion to reconsider," we take this opportunity to again reiterate

that "the West Virginia Rules of Civil Procedure do not explicitly recognize a 'motion for reconsideration.'" *Builders' Serv. & Supply Co. v. Dempsey*, 224 W.Va. 80, 83, 680 S.E.2d 95, 98 (2009) (per curiam) (citations omitted). *Accord Richardson v. Kennedy*, 197 W.Va. 326, 329, 475 S.E.2d 418, 421 (1996) ("Despite our repeated direction to the bench and bar of this State that a 'motion to reconsider' is not a properly titled pleading in West Virginia, it continues to be used."); *Savage v. Booth*, 196 W.Va. 65, 68, 468 S.E.2d 318, 321 (1996) ("[T]he West Virginia Rules of Civil Procedure do not recognize a 'motion for reconsideration.'"). Thus, we repeat our admonition to counsel to refer to a motion for relief from a court's order as a Rule 60(b) motion because the phrase "motion for reconsideration" simply is no longer within the vocabulary of this Court.

Procedure [7] to permit this issue to be appealed during the pendency of the remainder of the underlying abuse and neglect proceeding.

From these adverse rulings, the DHHR appeals to this Court. Chevie, through her Guardian ad Litem, also appears before this Court. However, neither Chevie's parents or Chevie's mother's boyfriend nor the West Virginia Public Defender Corporation are parties to the instant appeal.[8]

## II.

## STANDARD OF REVIEW

In the instant proceeding, the DHHR appeals from the circuit court's July 30, 2009, order charging the DHHR with the costs associated with the mother's expert witness in the underlying abuse and neglect proceeding and from the circuit court's August 24, 2009, order denying the DHHR's motion for relief from the court's July 30, 2009, order.

■ The sole issue decided by the circuit court in its July 30, 2009, order involves an interpretation of existing statutory and case law to determine which party is responsible for the payment of the mother's expert witness in the underlying abuse and neglect proceeding. "Where the issue on an appeal from the circuit court is clearly a question of law or involving an interpretation of a statute, we apply a *de novo* standard of review." Syl. pt. 1, *Chrystal R.M. v. Charlie A.L.*, 194

W.Va. 138, 459 S.E.2d 415 (1995). *Accord* Syl. pt. 1, *Appalachian Power Co. v. State Tax Dep't of West Virginia*, 195 W.Va. 573, 466 S.E.2d 424 (1995) ("Interpreting a statute or an administrative rule or regulation presents a purely legal question subject to *de novo* review."). Therefore, our review of the circuit court's order charging the DHHR with the payment of the mother's expert witness is plenary.

■ Also on appeal to this Court is the circuit court's August 24, 2009, order denying the DHHR's motion for relief from the court's prior order. As we explained in the preceding section, the phrase "motion for reconsideration" is not a part of this Court's vernacular. Rather, motions brought pursuant to Rule 60(b) of the West Virginia Rules of Civil Procedure that request relief from a court's judgment or order should be referred to as such. *See, e.g., Builders' Serv. & Supply Co. v. Dempsey*, 224 W.Va. 80, 83, 680 S.E.2d 95, 98 (2009) (per curiam); *Richardson v. Kennedy*, 197 W.Va. 326, 329, 475 S.E.2d 418, 421 (1996); *Savage v. Booth*, 196 W.Va. 65, 68, 468 S.E.2d 318, 321 (1996). When a court is called upon to decide a Rule 60(b) motion, this Court has found such a ruling to lie within the court's discretion:

> A motion to vacate a judgment made pursuant to Rule 60(b), W. Va. R.C. P., is addressed to the sound discretion of the court and the court's ruling on such motion

---

7. West Virginia Rule of Civil Procedure 54(b) provides, in pertinent part:

> [w]hen more than one claim for relief is presented in an action, whether as a claim, counterclaim, cross-claim, or third-party claim, or when multiple parties are involved, the court may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment.

8. The circuit court entered a final dispositional order in the underlying abuse and neglect case on January 17, 2010, whereby Chevie's father was awarded her physical and legal custody and Chevie's mother was granted supervised visitation. The order does not provide, however, whether the parental rights of Chevie's mother were terminated or whether such parental rights remain in force and effect. Having reviewed the record in this case, we are very troubled by the delay between the occurrence of the circuit

court's dispositional hearing, held on December 28, 2009, and the court's subsequent entry of its dispositional order on January 17, 2010, nearly one month later and outside the time period within which such orders are required to be filed. *See* W. Va. R.P. Child Abuse & Neglect Proc. 36(a) ("At the conclusion of the disposition hearing, the court shall make findings of fact and conclusions of law, in writing or on the record, as to the appropriate disposition in accordance with the provisions of W. Va.Code § 49–6–5. *The court shall enter a disposition order, including findings of fact and conclusions of law, within ten (10) days of the conclusion of the hearing.*" (emphasis added)). *Accord In re B.B.*, 224 W.Va. 647, 655 n. 19, 687 S.E.2d 746, 754 n. 19 (2009) (per curiam) (same). Accordingly, we remind circuit courts of their duty to be vigilant in adhering to the guidelines governing abuse and neglect proceedings and the entry of orders therein.

will not be disturbed on appeal unless there is a showing of an abuse of such discretion.

Syl. pt. 5, *Toler v. Shelton,* 157 W.Va. 778, 204 S.E.2d 85 (1974). Therefore, the circuit court's decision to grant or deny the requested Rule 60(b) motion is within the court's discretion.

We proceed to consider the parties' arguments in light of these standards.

## III.

## DISCUSSION

On appeal to this Court, the DHHR assigns error to (1) the circuit court's decision to hold it responsible for the payment of the mother's expert witness fees and (2) the circuit court's ruling that such payment be made in accordance with the fee schedule established by the Public Defender Corporation. Although the DHHR's appeal is from both the circuit court's initial payment order and the court's subsequent order denying the DHHR's motion for relief from its first order, both orders must be considered together insofar as the subsequent order sets forth the court's reasoning for its initial decision.

### A. *Party Responsible for Payment of Expert Witness Costs in Abuse and Neglect Proceeding*

In its order of July 30, 2009, the circuit court very succinctly "ORDER[ED] that the West Virginia Department of Health and Human Resources reimburse [Chevie's mother's attorney] the amount of $6,810.63 paid by [the mother's attorney] for services and expenses rendered and incurred by Dr. Mary Carrasco[.]" Through its subsequent, August 24, 2009, order, the circuit court explained that its decision to assess the DHHR with the mother's expert witness costs was based upon West Virginia Trial Court Rules 27.01 and 27.02, as well as W. Va.Code § 49-6-4(a) (2005) (Repl.Vol.2009). Before this Court, the DHHR contends, instead, that W. Va.Code § 29-21-13a(e) (2008) (Repl.Vol. 2008) and West Virginia Trial Court Rule 35.05(b) dictate that the Public Defender Corporation, not the DHHR, is responsible for the payment of the mother's expert witness. Finally, the minor child's Guardian ad Litem agrees with the circuit court's conclusion that the DHHR is the responsible party but urges, instead, that W. Va.Code § 49-7-33 (2002) (Repl.Vol.2009) is determinative of the issue.

 Insofar as the instant controversy requires this Court to review and apply various statutes, we begin our analysis with a brief summary of the rules of statutory construction. When deciding a statutory matter, we first must determine the intent of the Legislature in adopting the statute in question. "The primary object in construing a statute is to ascertain and give effect to the intent of the Legislature." Syl. pt. 1, *Smith v. State Workmen's Comp. Comm'r,* 159 W.Va. 108, 219 S.E.2d 361 (1975). Next, we consider the precise wording of the statutory enactment. Plain statutory language must be applied as it is written. "When a statute is clear and unambiguous and the legislative intent is plain, the statute should not be interpreted by the courts, and in such case it is the duty of the courts not to construe but to apply the statute." Syl. pt. 5, *State v. General Daniel Morgan Post No. 548, V.F.W.,* 144 W.Va. 137, 107 S.E.2d 353 (1959). *Accord* Syl. pt. 2, *Crockett v. Andrews,* 153 W.Va. 714, 172 S.E.2d 384 (1970) ("Where the language of a statute is free from ambiguity, its plain meaning is to be accepted and applied without resort to interpretation."); Syl. pt. 2, *State v. Epperly,* 135 W.Va. 877, 65 S.E.2d 488 (1951) ("A statutory provision which is clear and unambiguous and plainly expresses the legislative intent will not be interpreted by the courts but will be given full force and effect."). However, ambiguous statutory language must be construed before it can be applied. "Judicial interpretation of a statute is warranted only if the statute is ambiguous and the initial step in such interpretative inquiry is to ascertain the legislative intent." Syl. pt. 1, *Ohio Cnty. Comm'n v. Manchin,* 171 W.Va. 552, 301 S.E.2d 183 (1983). *Accord* Syl. pt. 1, *Farley v. Buckalew,* 186 W.Va. 693, 414 S.E.2d 454 (1992) ("A statute that is ambiguous must be construed before it can be applied.").

 As a final matter, the ruling of the circuit court and the arguments of the vari-

ous parties to the case *sub judice* suggest that there exist many statutes and rules that are perceived to apply to the issues before us. Obviously, not all of these authorities are in agreement, or the instant controversy would not exist. Under the rules of statutory construction, where different statutes speak to the same subject matter but conflict with one another, the more specific statute governs. " 'The general rule of statutory construction requires that a specific statute be given precedence over a general statute relating to the same subject matter where the two cannot be reconciled.' Syllabus point 1, *UMWA by Trumka v. Kingdon,* 174 W.Va. 330, 325 S.E.2d 120 (1984)." Syl. pt. 6, *State ex rel. Tucker Cnty. Solid Waste Auth. v. West Virginia Div. of Labor,* 222 W.Va. 588, 668 S.E.2d 217 (2008).

Although this Court previously has considered the first issue presented for our resolution, *i.e.,* who is responsible for paying for a parent's expert witness in an abuse and neglect proceeding, this matter essentially remains one of first impression. In our first case involving this question, *Hewitt v. State of West Virginia Department of Health and Human Resources,* 212 W.Va. 698, 575 S.E.2d 308 (2002), the DHHR appealed from an order requiring it to pay an expert witness who had provided services in several juvenile delinquency and abuse and neglect cases. Although W. Va.Code § 49–7–33 was in effect at the time the Court issued its opinion, the statute had been enacted after the facts at issue in that case and thus did not apply thereto. Absent express statutory direction on this point, the Court held, in Syllabus point 2, that

> [i]n recognition of the lack of an express funding obligation provided for expert fees in juvenile delinquency cases and pursuant to our inherent authority to manage the courts of this state, this Court will assume financial responsibility in matters arising under this state's juvenile delinquency laws for the fees properly charged by expert witnesses appointed by the trial courts and subsequently approved for payment.

212 W.Va. 698, 575 S.E.2d 308. With respect to the expert witness fees associated with abuse and neglect proceedings, the Court

> determine[d] that all orders approving and awarding payment for services performed by [the expert witness] in abuse and/or neglect cases that were entered prior to June 7, 2002, the effective date of West Virginia Code § 49–7–33 (2002), shall be paid by DHHR at the rate approved by the trial court. Any payment orders pertaining to abuse and/or neglect matters entered following the effective date of West Virginia Code § 49–7–33, shall be paid by DHHR at the rate established by Medicaid and adopted by DHHR for such services.

212 W.Va. at 700, 575 S.E.2d at 310 (footnote omitted).

The Court further commented on the thorny issue that could not be finally resolved in that case and concluded that conflicting statutes governed who, exactly, is responsible for paying for expert witnesses in abuse and neglect proceedings:

> A significant and lingering issue, which cannot be resolved today, arises from the conflicting statutory provisions now in effect that address the award of expert fees in abuse and neglect cases. Notwithstanding the enactment of West Virginia Code § 49–7–33 and its grant of authority to DHHR to set rates for expert witnesses, previously established authority still exists for circuit courts to "provide for the payment of all such expert witnesses" in abuse and neglect proceedings. W. Va.Code § 49–6–4. As a result of this continuing authority in the circuit courts, we do not accept the position of DHHR that it has exclusive authority for the payment of expert fees in abuse and neglect cases under the provisions of W. Va.Code § 49–7–33. Clearly, that provision, when properly invoked, enables the Department to use Medicaid-established rates for the provision of health care services as required under chapter 49, articles five and six, where such rates are available. Critically, however, a circuit court still retains the ultimate authority for entry of all orders directing payment of expert witness fees in

abuse and neglect matters. *See* W.Va. Code § 49–6–4.

212 W.Va. at 702–03, 575 S.E.2d at 312–13 (footnotes omitted). Following the Court's opinion containing this language, however, the Legislature amended W. Va.Code § 49–6–4 to remove the phrase discussed in *Hewitt*. *Cf.* W. Va.Code § 49–6–4(a) (1984) (Repl.Vol.2004) (former version of statute, which contains above-referenced language) *with* W. Va.Code § 49–6–4(a) (2005) (Repl. Vol.2009) (current version of statute, from which referenced language has been removed). Therefore, the central question as to who is responsible for the payment of expert witnesses in abuse and neglect cases remains unresolved following *Hewitt.*

Thereafter, the Court revisited the scope of its mandate in *Hewitt* as it pertained to the payment of expert witnesses in juvenile delinquency proceedings in *State ex rel. Artimez v. Recht,* 216 W.Va. 709, 613 S.E.2d 76 (2005)(per curiam). While reiterating the *Hewitt* language detailing the DHHR's obligation to pay for expert witnesses in the abuse and neglect cases at issue in *Hewitt,* the *Artimez* decision did not further discuss the party responsible for the payment of expert witnesses in abuse and neglect proceedings such as the case *sub judice.* *See Artimez,* 216 W.Va. at 711, 613 S.E.2d at 78 (footnote omitted).

The final case this Court has decided regarding the payment of expert witnesses is limited to expert witnesses providing services in juvenile delinquency proceedings. *See In re Bobby Lee B.,* 218 W.Va. 689, 629 S.E.2d 748 (2006)(per curiam). Insofar as the instant appeal involves abuse and neglect proceedings, and not juvenile delinquency matters, our prior decision in *Bobby Lee B.* is not instructive to our present inquiry. Thus, because we have not yet definitively determined, under existing statutory law, who must pay for a parent's expert witness in an abuse and neglect proceeding, we will consider the various authorities relied upon by the circuit court and the parties to this appeal.

■ **1. W. Va. Trial Court Rules 27.01 & 27.02 and W. Va.Code § 49–6–4(a) (2005) (Repl.Vol.2009).** In explaining the reasoning for its July 30, 2009, ruling requiring the DHHR to pay for the mother's expert witness fees, the circuit court relied upon W. Va. Trial Court Rules 27.01 and 27.02, as well as W. Va.Code § 49–6–4(a). Trial Court Rule 27.01 provides that, "[u]pon motion by a party or upon its own motion, the court may appoint an expert to perform a medical or psychological evaluation and may require such expert to testify, pursuant to West Virginia Code § 49–6–4." Rule 27.02 further explains that

> [t]he court shall by order establish in advance the reasonable fees and expenses to be paid to an expert. Payment shall be as follows: Upon completion of services by an expert, the court shall, by order, direct the State Department of Health and Human Resources to pay for the expert's evaluation, report writing, consultation, or other preparation; and the court shall, by order, direct payment by the Supreme Court's Administrative Office for the expert's fee and expenses entailed in appearing to testify as a witness.

While these rules specifically pertain to "expert assistance in child abuse or neglect cases," W. Va. Trial Ct. R., ch. 27, these rules do not apply to the case *sub judice* insofar as the circuit court did not specifically choose or appoint the mother's expert witness. Rather, here, the mother approached the circuit court about the possibility of hiring an expert witness. The circuit court then merely *approved* the mother's request to hire an expert, and then she, herself, proceeded to select and hire her own expert witness. Thus, because these rules govern *appointed* expert witnesses, rather than those hired following court approval, they do not apply to the case *sub judice.*

The circuit court also found basis for its decision in W. Va.Code § 49–6–4(a), which statute is referenced in Trial Court Rule 27.01. In pertinent part, W. Va.Code § 49–6–4(a) states that,

> [a]t any time during proceedings under this article the court may, upon its own motion or upon motion of the child or other parties, order the child or other parties to be examined by a physician, psychologist or psychiatrist, and may require testimony

from such expert, subject to cross-examination and the rules of evidence.... If the child, parent or custodian is indigent, such witnesses shall be compensated out of the Treasury of the State, upon certificate of the court wherein the case is pending....

As with Trial Court Rule 27.01, however, this statute also pertains to experts who have been appointed by a court because it speaks directly in terms of the court "order[ing]" such examination. In the abuse and neglect proceeding underlying the instant appeal, however, the circuit court did not order any party to be examined by the expert witness requested by Chevie's mother, and, in fact, Chevie's mother was not certain she would definitely call an expert witness when she requested the court's approval to retain one. Rather, Chevie's mother merely sought the circuit court's blessing to hire an expert witness if necessary to rebut the DHHR's evidence of Chevie's abuse and/or neglect. Because the circuit court in this case only approved, and did not appoint, the mother's expert, W. Va.Code § 49–6–4(a) likewise does not apply to the facts of this case. Therefore, we reject the circuit court's reliance on W. Va. Trial Court Rules 27.01 and 27.02 and W. Va.Code § 49–6–4(a) as authority supporting its decision to require the DHHR to pay for the mother's expert.

**2. W. Va.Code § 29–21–13a(e) (2008) (Repl.Vol.2008) and W. Va. Trial Court Rule 35.05(b).** By contrast, the DHHR advocates that the governing authorities dictating payment of the mother's expert witness by the Public Defender Corporation are W. Va.Code § 29–21–13a(e) and W. Va. Trial Court Rule 35.05(b). W. Va.Code § 29–21–13a(e) specifies that,

> [f]or all other eligible proceedings, actual and necessary expenses incurred in providing legal representation, including, but not limited to, expenses for travel ... *and expert witnesses* ... shall be reimbursed to a maximum of one thousand five hundred dollars unless the court, for good cause shown, approves reimbursement of a larger sum.

(Emphasis added). By definition, the reference to "[e]ligible proceeding[s]" encompasses "child abuse and neglect proceedings which may result in a termination of parental rights," W. Va.Code § 29–21–2(2) (1996) (Repl.Vol.2008), such as the underlying abuse and neglect proceeding at issue in this case.

Although this statute is relevant and specifically applies to abuse and neglect proceedings, abuse and neglect proceedings are only one of approximately fourteen different categories of cases that qualify as an "eligible proceeding" under W. Va.Code § 29–21–2(2). As such, W. Va.Code § 29–21–13a(e) is a more general statute delineating who is responsible for paying for an indigent parent's expert witness fees in an abuse and neglect proceeding because it establishes the Public Defender Corporation's payment obligation not just for abuse and neglect cases but for all types of proceedings involving an indigent defendant. As a rule, when both a specific and a general statute apply to a given case, the *specific* statute governs. *See* Syl. pt. 6, *State ex rel. Tucker Cnty. Solid Waste Auth. v. West Virginia Div. of Labor,* 222 W.Va. 588, 668 S.E.2d 217 (" 'The general rule of statutory construction requires that a specific statute be given precedence over a general statute relating to the same subject matter where the two cannot be reconciled.' Syllabus point 1, *UMWA by Trumka v. Kingdon,* 174 W.Va. 330, 325 S.E.2d 120 (1984)."). W. Va.Code § 29–21–13a(e), being a more *general* statute pertaining to several different types of cases, necessarily must yield to the more *specific* statute, W. Va.Code § 49–7–33, whose scope is limited solely to abuse and neglect and juvenile proceedings.

The DHHR also urges that Rule 35.05(b) of the W. Va. Trial Court Rules similarly charges the Public Defender Corporation as the responsible party for the payment of the mother's expert witness expenses. Chapter 35 of the W. Va. Trial Court Rules addresses "public funding for expert assistance." More specifically, W. Va. Trial Court Rule 35.05(b) directs that

> [t]he court shall by order establish and approve in advance the reasonable fees and expenses to be paid to an expert....
>
> ....

(b) Expert Requested by an Indigent Defendant.—Upon completion of services by such expert, the court shall, by order, direct payment by Public Defender Services pursuant to W. Va.Code, Chapter 29 [see §§ 29–21–1 et seq.].

In the same manner as W. Va.Code § 29–21–13a(e), however, Rule 35.05(b), while applicable to abuse and neglect proceedings among other cases, is simply too broad and general when compared with the more specific scope of W. Va.Code § 49–7–33. Therefore, we do not find either W. Va.Code § 29–21–13a(e) or W. Va. Trial Court Rule 35.05(b) to be persuasive authority to relieve the DHHR of its payment obligation in this case.

■ 3. W. Va.Code § 49–7–33 (2002) (Repl.Vol.2009). Lastly, the Guardian ad Litem suggests that W. Va.Code § 49–7–33 definitively establishes the DHHR's responsibility for paying Chevie's mother's expert witness costs as ordered by the circuit court. The full text of W. Va.Code § 49–7–33 provides

[a]t any time during any proceedings brought pursuant to articles five [§§ 49–5–1 et seq.] [juvenile proceedings] and six [§§ 49–6–1 et seq.] [cases of child neglect or abuse] of this chapter, the court may upon its own motion, or upon a motion of any party, order the West Virginia Department of Health and Human Resources to pay for professional services rendered by a psychologist, psychiatrist, physician, therapist or other health care professional to a child or other party to the proceedings. Professional services include, but are not limited to, treatment, therapy, counseling, evaluation, report preparation, consultation and preparation of expert testimony. The West Virginia Department of Health and Human Resources shall set the fee schedule for such services in accordance with the Medicaid rate, if any, or the customary rate and adjust the schedule as appropriate. Every such psychologist, psychiatrist, physician, therapist or other health care professional shall be paid by the West Virginia Department of Health and Human Resources upon completion of services and submission of a final report or other information and documentation as required by the policies and procedures implemented by the West Virginia Department of Health and Human Resources.

We find this statutory language to be plain and capable of but one construction. As such, W. Va.Code § 49–7–33 must be applied as it is written. See Syl. pt. 5, State v. General Daniel Morgan Post No. 548, V.F.W., 144 W.Va. 137, 107 S.E.2d 353. Accordingly, we hold that, pursuant to the plain language of W. Va.Code § 49–7–33 (2002) (Repl.Vol.2009), a circuit court "may ... order the West Virginia Department of Health and Human Resources to pay for professional services" incurred in a child abuse and neglect proceeding. Such "professional services" include, but are not limited to, "evaluation, report preparation, consultation and preparation of expert testimony" by an expert witness. W. Va.Code § 49–7–33.

■ Having found this statutory language to be plain, we next must consider whether it is determinative of the instant controversy. We find that it is. Unlike the statutes applicable to numerous different types of proceedings discussed in the preceding section, W. Va.Code § 49–7–33 specifically pertains only to juvenile and abuse and neglect proceedings. As such, it is a specific statute that expressly applies to abuse and neglect proceedings such as those underlying the instant appeal. Thus, as a more specific statute, this statute is dispositive and permits a circuit court to order the DHHR to pay for a party's expert witness in an abuse and neglect case. See Syl. pt. 6, Tucker Cnty. Solid Waste Auth., 222 W.Va. 588, 668 S.E.2d 217.

Finally, we must consider whether the circuit court correctly ordered the DHHR to pay for the expenses associated with Chevie's mother's expert witness. W. Va.Code § 49–7–33 employs the word "may" in describing the circuit court's authority to require the DHHR to pay for professional services. We have construed the word "may" to be permissive and connoting discretion. See Gebr. Eickhoff Maschinenfabrik Und Eisengieberei mbH v. Starcher, 174 W.Va. 618, 626 n. 12, 328 S.E.2d 492, 500 n. 12 (1985) ("An elementary principle of statutory construction is that the word 'may' is inherently permissive

in nature and connotes discretion." (citations omitted)). Here, the circuit court properly exercised its discretion in ordering the DHHR to pay for Chevie's mother's expert witness costs in the first instance. Moreover, the circuit court did not abuse its discretion in denying the DHHR's motion for relief from the court's July 30th order establishing the DHHR's payment obligation insofar as said order was correct because the circuit court was statutorily authorized to direct the DHHR to pay for the mother's expert witness. Accordingly, to the extent the circuit court ordered the DHHR to pay the expenses associated with Chevie's mother's expert witness in the underlying abuse and neglect proceeding and subsequently upheld its decision, both rulings are affirmed.[9]

### B. Fee Schedule Governing Payment of Expert Witness Costs in Abuse and Neglect Proceeding

With regard to the second issue presented for this Court's resolution, the DHHR contends that if we should find that the DHHR is the party responsible for the payment of the mother's expert witness in this case, then it, and not the Public Defender Corporation, should be permitted to set the fee for such services. We agree with the DHHR that the circuit court erred in requiring the DHHR to pay Chevie's mother's expert witness costs in accordance with the fee schedule adopted by the Public Defender Corporation and approved by the circuit court in its February 27, 2009, order.

■ W. Va.Code § 49–7–33 specifically describes the manner in which the expert fees for which the DHHR is responsible are to be calculated. In this regard, the statute expressly explains that

> [t]he West Virginia Department of Health and Human Resources shall set the fee schedule for such services in accordance with the Medicaid rate, if any, or the customary rate and adjust the schedule as appropriate. Every such psychologist,

psychiatrist, physician, therapist or other health care professional shall be paid by the West Virginia Department of Health and Human Resources upon completion of services and submission of a final report or other information and documentation as required by the policies and procedures implemented by the West Virginia Department of Health and Human Resources.

W. Va.Code § 49–7–33 (emphasis added). This language also is plain in its clarification of the method by which such payments are to be calculated. Thus, we hold that when a circuit court orders the West Virginia Department of Health and Human Resources to pay for professional services, including those provided by an expert witness, pursuant to the provisions of W. Va.Code § 49–7–33 (2002) (Repl.Vol.2009), the Department of Health and Human Resources shall be permitted to establish the fee schedule by which the professional will be paid "in accordance with the Medicaid rate, if any, or the customary rate [with] adjust[ments to] the schedule as appropriate." W. Va.Code § 49–7–33.

■ Although we approve the circuit court's decisions to charge the DHHR with payment of the mother's expert witness expenses, we disapprove of the court's corresponding requirement that the DHHR pay such expenses in accordance with a fee schedule that is not its own. W. Va.Code § 49–7–33 clearly and explicitly states that the DHHR "shall set the fee schedule for such services." "Shall" is a mandatory, directory term that does not afford discretion in fulfilling its command. See Syl. pt. 1, E.H. v. Matin, 201 W.Va. 463, 498 S.E.2d 35 (1997) (" 'It is well established that the word "shall," in the absence of language in the statute showing a contrary intent on the part of the Legislature, should be afforded a mandatory connotation.' Syllabus Point 1, Nelson v. West Virginia Public Employees Insurance Board, 171 W.Va. 445, 300 S.E.2d 86 (1982)."). Thus, the DHHR possesses the sole authority to determine the fee schedule

---

**9.** Although we affirm the circuit court's rulings based upon different authority than that relied upon by the circuit court in rendering its rulings, such disparity in decisional bases is permitted. See Syl. pt. 3, Barnett v. Wolfolk, 149 W.Va. 246, 140 S.E.2d 466 (1965) ("This Court may, on appeal, affirm the judgment of the lower court when it appears that such judgment is correct on any legal ground disclosed by the record, regardless of the ground, reason or theory assigned by the lower court as the basis for its judgment.").

by which professionals will be paid under W. Va.Code § 49–7–33. This conclusion reiterates our prior observation in *Hewitt* commenting that W. Va.Code § 49–7–33 "expressly grants authority to DHHR to set the rate for psychological evaluations and other types of services provided by a health care professional pursuant to the Medicaid-established rate, provided that such a rate exists." 212 W.Va. at 700 n. 1, 575 S.E.2d at 310 n. 1 (citations omitted). In spite of the DHHR's express authority, granted by statute and previously acknowledged by this Court in *Hewitt*, the circuit court nevertheless ignored the statute's directive, both through its initial order directing the DHHR to pay an amount that was calculated in accordance with the Public Defender Corporation's fee schedule and later when it refused the DHHR's request for relief on this ground. Consequently, we are compelled to reverse the circuit court's orders to the extent that they compel the DHHR to pay Chevie's mother's expert witness in accordance with the fee schedule adopted by the Public Defender Corporation. Accordingly, we remand this case to the circuit court for further proceedings to permit the DHHR to establish the fee schedule by which Chevie's mother's expert witness shall be paid in accordance with W. Va.Code § 49–7–33.

## IV.

### CONCLUSION

For the foregoing reasons, the July 30, 2009, and August 24, 2009, orders of the Circuit Court of Marshall County are hereby affirmed, in part, and reversed, in part, and this case is remanded for further proceedings consistent with this opinion.

Affirmed, in part; Reversed, in part; and Remanded.