**STATE OF WEST VIRGINIA**
**SUPREME COURT OF APPEALS**

*In re* **I.F., J.D., and I.D.**

**No. 22-0279** (Wayne County 21-JA-66, 21-JA-67, and 21-JA-68)

**MEMORANDUM DECISION**

Petitioners Mother A.F. ("the mother") and Father E.D. ("the father")[1] appeal the Circuit Court of Wayne County's April 6, 2022, order terminating the mother's parental rights to I.F., J.D., and I.D. and the father's parental rights to J.D. and I.D.[2] Upon our review, we determine that oral argument is unnecessary and that a memorandum decision affirming the circuit court's order is appropriate. *See* W. Va. R.A.P. 21.

In July of 2021, the DHHR filed a petition against petitioners alleging that then-two-month-old I.D. sustained four separate, extensive injuries, including subdural hematomas, fractured ribs, and two "corner" fractures on his tibia and knee, while in their sole care and custody. The circuit court held a contested adjudicatory hearing in September of 2021. The DHHR presented the testimony of Dr. Catherine Huber who stated that I.D.'s injuries were caused by nonaccidental trauma. She also stated that the father initially reported having no idea what caused the injuries but later stated that a mobile fell on the child's head while he laid in his crib. Dr. Huber explained that I.D.'s bilateral subdural hematomas could not have been caused by such an impact and that I.D. did not exhibit outward physical signs of being struck by an object. Further, Dr. Huber stated that I.D. did not have a blood thinning disorder that could have explained his subdural hematomas and that seizures could not have caused those injuries. Regarding I.D.'s fractured ribs, she explained that they were in various stages of healing, with some fractures less than four days old, and others older than four days. While the father stated that he performed cardiopulmonary resuscitation ("CPR") on I.D. when he suddenly became unresponsive, Dr. Huber opined that CPR was an unlikely cause of the child's numerous fractured ribs. Finally, Dr. Huber testified that I.D.'s tibia and knee fractures indicated that someone forcefully yanked his leg at the ankle joint.

---

[1]The mother appears by counsel Kimberly E. McGann, and the father appears by counsel Juston H. Moore. The West Virginia Department of Health and Human Resources ("DHHR") appears by counsel Patrick Morrisey and Steven R. Compton. Scott Bellomy appears as the children's guardian ad litem.

[2]We use initials where necessary to protect the identities of those involved in this case. *See* W. Va. R.A.P. 40(e).

The DHHR worker testified and confirmed that following his premature birth, I.D. stayed in the Neonatal Intensive Care Unit ("NICU") from May 25, 2021, to July 3, 2021, and left the NICU as a healthy baby without experiencing any problems during his stay. She stated that petitioners had been uncooperative since the petition was filed by turning away DHHR providers for parenting and adult life skills and supervised visitations.

The father testified that he believed I.D. sustained injuries during his stay in the NICU including the older rib fractures. He opined that I.D.'s newer rib fractures were caused by CPR. The father also stated that I.D.'s leg injury may have come from his birth via Cesarean Section. Otherwise, the father stated that he did not know what caused I.D.'s numerous injuries, including the subdural hematomas. The mother's explanations were the same as the father's, and she added that due to I.D.'s premature birth, the older children and the family pets were not allowed around him. The court found that despite the parents' various explanations for the fractures in I.D.'s left leg and his various broken ribs, there remained no alternative for I.D.'s subdural hematomas, that, according to medical evidence, must have occurred while he was in the sole care of the parents. Accordingly, the court adjudicated the parents as abusing parents to all three children.[3]

In October of 2021, the mother filed a "Motion For Reconsideration of Adjudication." Petitioners also filed motions for post-adjudicatory improvement periods. In November of 2021, petitioners moved to continue the hearing set for their motions arguing that "evidence necessary to any reconsideration and/or evidence that may be presented at the Dispositional hearing . . . will not be available until the child has been evaluated by geneticists." In December of 2021, the circuit court granted petitioners' request to submit I.D. to testing to rule out genetic conditions, such as Ehlers-Danlos Syndrome, a connective tissue disorder. In February of 2022, the father moved for the DHHR to pay for a medical expert to "aid in his defense."

The court held a final dispositional hearing in February of 2022, wherein it considered petitioners' outstanding motions. The DHHR presented evidence that I.D. had been genetically tested for Ehlers-Danlos Syndrome and that he did not suffer from the condition. The DHHR worker also stated that I.D. had not suffered from any new injuries while in foster care. The parents testified that they did not harm I.D. and stated that they had completed parenting classes on their own. In denying the parents' motions to reopen adjudication and hire an expert, the court noted that petitioners did not have a specific expert to hire and that the court had "fleshed out any concerns that the parents had . . . in relation to the Ehlers-Danlos Syndrome." The court also denied petitioners' motions for improvement periods. The court found that I.D.'s injuries were nonaccidental and that the parents refused to admit their roles in the child's abuse. Ultimately, the court concluded that there was no reasonable likelihood that the conditions of abuse and neglect could be substantially corrected in the future and that termination of petitioners' parental rights was necessary for the children's welfare. The circuit court denied post-termination visitation and

---

[3]*See* Syl. Pt. 2, *In re Christina L.,* 194 W. Va. 446, 460 S.E.2d 692 (1995) (where clear and convincing evidence shows that a child suffered physical abuse while in its parents' custody, the risk of abuse extends to other children who resided in the home when the abuse took place).

terminated petitioners' parental rights by order entered on April 6, 2022. Petitioners now appeal this order.[4]

On appeal from a final order in an abuse and neglect proceeding, this Court reviews the circuit court's findings of fact for clear error and its conclusions of law de novo. Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011). Petitioners first argue that the circuit court erred in denying their motion for an expert witness as allowed by West Virginia Code § 49-4-108(a).[5] As discussed in *In re Chevie V.*, 226 W. Va. 363, 372-73, 700 S.E.2d 815, 824-25 (2010), the controlling statute "employs the word 'may' in describing the circuit court's authority to require the DHHR to pay for professional services." The Court has "construed the word 'may' to be permissive and connoting discretion." *Id.* Crucially, petitioners fail to show that the circuit court abused this discretion in denying their motions for an expert witness, especially when they did not specify a particular expert whom they wished to hire or state what evidence the expert would present. Instead, petitioners advanced a theory that the child suffered from Ehlers-Danlos Syndrome, a suggestion that was disproven when the court ordered the child undergo genetic testing. Accordingly, we find that the court did not abuse its discretion in denying petitioners' motion for an expert witness. Furthermore, because petitioners predicated their motion to reopen adjudication on their need for an expert witness, which we find without merit, they similarly cannot be entitled to relief in regard to their motion to reopen adjudication."[6]

Next, petitioners argue that the circuit court erred in denying them improvement periods. We find that the evidence presented below supports the circuit court's determination that petitioners failed to acknowledge the cause or causes of I.D.'s injuries and that I.D. was the victim of serious physical abuse. This constitutes a sufficient basis upon which to deny petitioners' motions for improvement periods. *See In re Timber M.*, 231 W. Va. 44, 55, 743 S.E.2d 352, 363 (2013) (finding that a parent's "[f]ailure to acknowledge the existence of the problem . . . results in making the problem untreatable and in making an improvement period an exercise in futility at the child's expense"). Further, while petitioners attended hearings and MDT meetings, they turned away DHHR service providers and were uncooperative in the DHHR's attempt to develop a family case plan. As such, petitioners presented no evidence that they would substantially comply with the terms of an improvement period. *See* W. Va. Code § 49-4-610(2)(B) (requiring a parent to

---

[4]The mother's parental rights to all three children were terminated below. The father's parental rights to J.D. and I.D. were terminated below. I.F.'s father's parental rights were also terminated. The permanency plan for the children is adoption by the same foster family.

[5]"At any time . . . the court may . . . upon a motion of any party, order the [DHHR] to pay the Medicaid rates for professional services rendered by a health care professional to a child or other party to the proceedings." W. Va. Code § 49-4-108(a).

[6]Additionally, petitioners fail to cite to any relevant authority that entitles them to the relief they seek. Petitioners rely on *W. Va. Dep't of Health & Hum. Res. ex rel. Wright v. Scott C.*, 200 W. Va. 304, 489 S.E.2d 281 (1997), wherein the Court reversed a circuit court's denial of the guardian ad litem's motion to reconsider the dismissal of a child later determined to also reside with the abused child at issue. However, the facts of *Scott C.* are distinguishable from the facts at bar and are inapplicable to the Court's analysis. *Id.*, 200 W. Va. at 309, 489 S.E.2d at 286.

"demonstrate[], by clear and convincing evidence, that the [parent] is likely to fully participate in the improvement period" in order to be granted the same). Accordingly, we find no abuse of discretion in the circuit court's denial of petitioners' motions for an improvement period. *See In re Tonjia M.*, 212 W. Va. 443, 448, 573 S.E.2d 354, 359 (2002) (holding that a circuit court has the discretion to deny a motion for an improvement period when no improvement is likely).

Regarding petitioners' argument that the circuit court erred by terminating their parental rights, we find that the circuit court had a sufficient basis upon which to make the findings necessary for termination. *See* Syl. Pt. 3, *In re Jeffrey R.L.,* 190 W.Va. 24, 435 S.E.2d 162 (1993) (permitting termination of parental rights "where there is clear and convincing evidence that the infant child has suffered extensive physical abuse while in the custody of his or her parents, and there is no reasonable likelihood that the conditions of abuse can be substantially corrected because the perpetrator of the abuse has not been identified and the parents . . . have taken no action to identify the abuser"). The court noted that I.D. suffered nonaccidental trauma while in the sole care of petitioners who continued to deny harming the child, despite contrary medical evidence, which supported the findings that there was no reasonable likelihood the conditions could be corrected and that the children's welfare required termination. Because the court had ample evidence upon which to base its findings, petitioners are entitled to no relief.

Additionally, petitioners argue that the circuit court erred in denying them post-termination visitation because they shared bonds with the children. We find petitioners' arguments unavailing. Circuit courts may consider whether continued visitation or other contact with an abusing parent is in the child's best interest, including whether a "close emotional bond has been established." Syl. Pt. 5, in part, *In re Christina L.*, 194 W. Va. 446, 460 S.E.2d 692 (1995). The evidence must demonstrate that post-termination visitation "or continued contact would not be detrimental to the child's well[-]being." *Id.* Here, the circuit court considered the guardian's vehement request that petitioners be denied post-termination contact in light of I.D.'s severe physical injuries. Additionally, the court noted the children's young ages and that continued contact could confuse them and be detrimental to their stability and well-being. Accordingly, we find no error in the circuit court's denial of petitioners' motions for post-termination visitation with the children.

For the foregoing reasons, we find no error in the decision of the circuit court, and its April 6, 2022, order is hereby affirmed.

Affirmed.

**ISSUED**: October 26, 2022


**CONCURRED IN BY**:

Chief Justice John A. Hutchison
Justice Elizabeth D. Walker
Justice Tim Armstead
Justice William R. Wooton
Justice C. Haley Bunn

4