# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

*In re* **J.B.**

**No. 19-0581** (Randolph County 18-JA-151)

**FILED**
**April 6, 2020**
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Mother C.W., by counsel Steven B. Nanners, appeals the Circuit Court of Randolph County's June 7, 2019, order terminating her parental rights to J.B.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Lee Niezgoda, filed a response in support of the circuit court's order. The guardian ad litem, Melissa T. Roman, filed a response on behalf of the child in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in denying her funds for a second parental fitness evaluation, denying her request for an improvement period, and terminating her parental rights.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In November of 2018, the DHHR filed an abuse and neglect petition against petitioner and J.B.'s father due to petitioner's substance abuse, her decision to allow known drug users into her home, and her inability to "protect her son from witnessing . . . people use drugs including herself." Further, the DHHR alleged that when petitioner allowed known drug abusers into her home, it eventually culminated in a robbery and murder in the presence of J.B., who was just four years old at the time. In December of 2018, petitioner waived her right to a preliminary hearing. The circuit court granted petitioner supervised visitation, provided that she pass required drug screens.

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990).

In January of 2019, the circuit court held an adjudicatory hearing wherein petitioner stipulated that "her substance abuse problem . . . impaired her ability to care" for her child and that she endangered the child by allowing individuals she did not know into her home. Petitioner also moved the circuit court for a post-adjudicatory improvement period. The court deferred ruling on the motion, scheduled the matter for further hearing, and ordered that petitioner complete a parental fitness evaluation with a provider chosen by the circuit court.

In January of 2019, petitioner was late for her scheduled parental fitness evaluation. During the evaluation, petitioner left for a requested "smoke break" and was gone for over an hour. When petitioner returned, her speech was slurred and she appeared lethargic. Petitioner was also unable to finish the tests required for the evaluation. During the interview portion of the evaluation, petitioner reported that she had a "gift from God" which enabled her to see "visions," such as seeing and hearing deceased relatives converse with each other in her home. She claimed the man who was recently murdered in her home spoke with her after his death. Additionally, petitioner admitted to abusing methamphetamine the night before her evaluation but denied any addictions and claimed to not need substance abuse treatment. As a result of the evaluation, petitioner was diagnosed with severe stimulant use, cannabis use, and unspecified personality disorders. The evaluation noted petitioner's methamphetamine usage placed the child at risk in her care and that petitioner "does not have the parental capacity to care, protect, and change . . . to provide adequately for her [child]."

In February of 2019, the circuit court held a hearing where the DHHR moved to terminate petitioner's parental rights. Petitioner moved for new counsel to be appointed. The circuit court granted petitioner's request for new counsel, deferred ruling on the DHHR's motion for termination of parental rights, and continued the hearing until March. At the continued hearing, petitioner moved for another continuance, this time to allow her to complete a second parental fitness evaluation that petitioner scheduled for April 10, 2019, with a provider of her choosing that she paid for. The circuit court granted the continuance. However, on April 23, 2019, petitioner filed a motion asking the circuit court to order the DHHR to pay for the second parental fitness evaluation, which she had not yet completed.

In May of 2019, the circuit court held a final dispositional hearing. Petitioner renewed her motion for the DHHR to pay for a second parental fitness evaluation and continue the hearing to allow for the completion of the second evaluation. The circuit court denied petitioner's motion, finding that she failed to cooperate with her first evaluation and that there was no basis to justify further delay. The circuit court then heard the DHHR's motion to terminate petitioner's parental rights. Service providers testified to petitioner's noncompliance, including one provider who noted that petitioner only attended two of her parenting classes and then "claimed she was entering an inpatient drug treatment program but failed to go" and never reinitiated parenting services. Additionally, petitioner tested positive for various substances during her required drug screenings, including benzodiazepine, alcohol, and methamphetamine. Finally, the DHHR played a taped interview with J.B. The child testified to witnessing petitioner taking drugs through her nose and witnessing "a guy dying," describing the murder that took place inside petitioner's home. Ultimately, the circuit court concluded that there was no reasonable likelihood that the conditions of abuse and neglect could be substantially corrected in the near future and that it was in the best interest of the child to terminate petitioner's parental rights. Following the hearing, the circuit court

entered a dispositional order denying petitioner's motion for an improvement period and terminating her parental rights.[2] It is from this dispositional order that petitioner appeals.

The Court has previously established the following standard of review:

> "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011).

On appeal, petitioner first alleges that the circuit court erred in denying her motion for funds to obtain a second parental fitness evaluation. In support of her assertion that the DHHR should have provided funds for a second parental fitness evaluation, petitioner cites to *In re: Chevie V.*, 226 W. Va. 363, 700 S.E.2d 815 (2010), which holds that the DHHR must pay for professional services once a circuit court orders them. Her reliance on this case, however, is misplaced as payment in *Chevie V.* was predicated on the circuit court's prior approval of such professional services, which did not occur in the case on appeal.[3]

Here, it is undisputed that the DHHR paid for many services for petitioner, including an initial parental fitness evaluation, as ordered by the circuit court. Our holding in *Chevie V.* does not, however, stand for the proposition that petitioner may request multiple parental fitness evaluations merely because she may be unsatisfied with the outcome of the first parental

---

[2]J.B.'s father voluntarily relinquished his parental rights. The permanency plan is for J.B. to be adopted by his current foster family.

[3]In support of her first assignment of error, petitioner asserts that the DHHR should have paid for a second parental fitness evaluation. Petitioner, however, first asked the circuit court for additional time in the proceedings so she could complete a second evaluation from a provider of her choosing. She represented to the circuit court that the second evaluation was scheduled for April 10, 2019. No discussion of payment was made in her motion. Then, on April 23, 2019, petitioner filed a motion asking the circuit court to order the DHHR to pay for the second evaluation she previously indicated was to occur on April 10, 2019. The circuit court denied petitioner's motion. Thus, the circuit court never ordered a second parental fitness evaluation, but only allowed petitioner additional time to obtain a second evaluation and was under the impression petitioner would do so with her own funding.

evaluation. In fact, the circuit court found that petitioner did not fully cooperate with the first evaluation as she was "late to the evaluation, was uncooperative, left during the evaluation and came back under the influence of substances." Given that petitioner was provided a parental fitness evaluation that was funded by the DHHR, we do not find that *Chevie V.* entitles petitioner to a second evaluation, as she argues on appeal.

Petitioner further argues that the circuit court's decision to deny funds for a second parental fitness evaluation "denied her due process in the [d]ispositional [h]earing." *See* W. Va. Code § 49-4-601(h) ("In any proceeding pursuant to this article, the party or parties having custodial or other parental rights or responsibilities to the child shall be afforded a meaningful opportunity to be heard, including the opportunity to testify and to present and cross-examine witnesses."); *id*. at § 49-4-604(a) (requiring that, at disposition, a parent be given "an opportunity to be heard"). Petitioner is correct that a "dispositional stage is a crucial stage of the proceedings" in an abuse and neglect matter. However, petitioner's right to due process was not violated by the circuit court's denial of her motion for a second parental fitness evaluation when there was no evidence that a second evaluation would have yielded a different result.

Petitioner was already provided a parental fitness evaluation, and, despite petitioner's lack of cooperation, the provider still produced a written report. Petitioner was free to use the evidence from the report at her hearings. Further, the written report from the evaluation diagnosed petitioner with an unspecified personality disorder, as well as paranoid, schizotypal, and borderline personality traits, which explains her description of events "that appear to be visual and auditory hallucinations." During the dispositional hearing, petitioner repeated the accounts of her "visions." Petitioner also denied being addicted to drugs or alcohol and failed to acknowledge any trauma her son may have suffered as a result of her addiction during her evaluation and again during her testimony. As such, petitioner's own testimony confirmed several observations documented in the evaluation. Accordingly, we find that the denial of petitioner's motion to require the DHHR to pay for a second parental fitness evaluation does not constitute a violation of petitioner's due process rights.

In her second assignment of error, petitioner alleges that the circuit court erred in denying her motion for an improvement period because she was "undergoing counseling . . . [and] that she had been able to comply with a prior seven[-]day safety plan and get her child back in 2016." Petitioner also argues that "she could fix the conditions of abuse and neglect and that she would be able to comply with services." In light of this, she argues that the circuit court should have granted her a post-adjudicatory improvement period. We disagree.

Notably, petitioner does not dispute the circuit court's findings that she "continue[d] to test positive numerous times for controlled substances" or that she "denie[d] that she has a drug problem." Petitioner also does not dispute that she missed parenting sessions and failed to follow through on a promised inpatient drug treatment program, which was her stated reason for missing her parenting sessions. Instead, petitioner acknowledges that the "burden is upon the . . . [p]arent when seeking an [i]mprovement period" and the decision to grant or deny an improvement period rests in the sound discretion of the circuit court. *See In re M.M.*, 236 W. Va. 108, 115, 778 S.E.2d 338, 345 (2015).

While it may be true that petitioner has previously acknowledged struggling with substance abuse, she has at other times flatly denied such abuse, even when confronted with positive drug screens and other evidence. Additionally, the circuit court found by clear and convincing evidence that petitioner failed to avail herself of services offered to her during her case and "failed to establish that she will likely fully cooperate with services." Although petitioner argues she was able to comply with a prior safety plan as evidence supporting the granting of an improvement period, this refers to a prior proceeding in 2016 and, as such, carries little weight in regard to the denial of an improvement period in this matter.

West Virginia Code § 49-4-610(2)(B) provides that the circuit court may grant a parent a post-adjudicatory improvement period when the parent "demonstrates, by clear and convincing evidence, that the [parent] is likely to fully participate in the improvement period." "This Court has explained that 'an improvement period in the context of abuse and neglect proceedings is viewed as an opportunity for the miscreant parent to modify his/her behavior so as to correct the conditions of abuse and/or neglect with which he/she has been charged.'" *In re Kaitlyn P.*, 225 W. Va. 123, 126, 690 S.E.2d 131, 134 (2010) (citation omitted). However, the circuit court has discretion to deny an improvement period when no improvement is likely. *In re Tonjia M.*, 212 W. Va. 443, 448, 573 S.E.2d 354, 359 (2002). Further, we have previously held that

> [i]n order to remedy the abuse and/or neglect problem, the problem must first be acknowledged. Failure to acknowledge the existence of the problem, i.e., the truth of the basic allegation pertaining to the alleged abuse and neglect or the perpetrator of said abuse and neglect, results in making the problem untreatable and in making an improvement period an exercise in futility at the child's expense.

*In re Timber M.*, 231 W. Va. 44, 55, 743 S.E.2d 352, 363 (2013) (citation omitted). Given petitioner's failure to acknowledge her drug addiction and how her actions constituted abusive and neglectful behavior, the granting of an improvement period would have been futile. Accordingly, we find no error in the circuit court's denial of her motion.

Next, petitioner alleges that the circuit court should have imposed a less-restrictive dispositional alternative. However, the same evidence set forth above supports the termination of petitioner's parental rights. West Virginia Code § 49-4-604(b)(6) permits a circuit court to terminate parental rights upon findings that "there is no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected in the near future" and that termination is necessary for the welfare of the child. Additionally, under West Virginia Code § 49-4-604(c)(1), a situation in which there is no reasonable likelihood that the conditions of abuse and neglect can be substantially corrected includes one in which

> [t]he abusing parent . . . [has] habitually abused or [is] addicted to alcohol, controlled substances or drugs, to the extent that proper parenting skills have been seriously impaired and the person or persons have not responded to or followed through the recommended and appropriate treatment which could have improved the capacity for adequate parental functioning.

With these parameters in mind, the record clearly supports the circuit court's finding that there was no reasonable likelihood petitioner could substantially correct the conditions of neglect, given her untreated substance abuse, failure to acknowledge the abuse, and failure to avail herself of opportunities to treat her addiction and improve her parenting. While it is true that petitioner may be able to undergo some treatment in the future for her substance abuse, such possible improvement is based on pure speculation. Indeed, petitioner denied that she had a substance abuse problem on several occasions. Further, when petitioner availed herself of the DHHR's services, she missed scheduled appointments, including parenting classes. When confronted with missing her parenting classes, petitioner claimed she was going into inpatient treatment, only to never follow through or continue with her prior parenting classes. Despite this, petitioner claims that she should have been granted a less-restrictive disposition because she might eventually be able to correct the conditions of abuse and neglect, but we have previously held that "[c]ourts are not required to exhaust every speculative possibility of parental improvement . . . where it appears that the welfare of the child will be seriously threatened." *Cecil T.*, 228 W. Va. at 91, 717 S.E.2d at 875, syl. pt. 4, in part (citation omitted). Accordingly, we find no error in the circuit court's findings that there was no reasonable likelihood the conditions of abuse and neglect could have been substantially corrected in the near future and that termination was necessary for the child's welfare.

While petitioner argues that the circuit court should have employed a less-restrictive dispositional alternative, we have held that

> "[t]ermination of parental rights, the most drastic remedy under the statutory provision covering the disposition of neglected children, [West Virginia Code § 49-4-604] may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood under [West Virginia Code § 49-4-604(c)] that conditions of neglect or abuse can be substantially corrected." Syllabus point 2, *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980).

Syl. Pt. 5, *In re Kristin Y.*, 227 W. Va. 558, 712 S.E.2d 55 (2011). Accordingly, we find no error in the decision of the circuit court, and its June 7, 2019, order is hereby affirmed.

Affirmed.

**ISSUED**: April 6, 2020

**CONCURRED IN BY**:

Chief Justice Tim Armstead
Justice Margaret L. Workman
Justice Elizabeth D. Walker
Justice Evan H. Jenkins
Justice John A. Hutchison