# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**FILED**

**September 3, 2020**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

*In re* **W.D.**

**No. 20-0098** (Wood County 17-JA-190)

## MEMORANDUM DECISION

Petitioner Mother J.B., by counsel J. Morgan Leach, appeals the Circuit Court of Wood County's January 7, 2020, order terminating her parental rights to W.D.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Mindy M. Parsley, filed a response in support of the circuit court's order. The guardian ad litem ("guardian"), Robin Bonovitch, filed a response on behalf of the child also in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in denying her motions for a second parental fitness evaluation and a post-dispositional improvement period and terminating her parental rights.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In July of 2017, the DHHR filed an abuse and neglect petition alleging that when the parents vacated their residence in Washington County, Ohio, the same month, they left behind a notebook that contained detailed and graphic conversations between them discussing plans to sexually abuse then-one-year-old W.D. Upon investigation, the matter was referred to the DHHR due to the parents' residence in Wood County, West Virginia.[2] The DHHR concluded that the

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990).

[2]In the proceedings below, the parents filed a joint motion to dismiss based upon lack of jurisdiction in October of 2017. The circuit court ultimately denied that motion after finding that

(continued . . .)

1

parents were not capable of providing appropriate protection and supervision in light of their explicit written discussions regarding sexual acts with their child and "being okay with the other taking part in the sexual acts with their child." Stemming from the discovery of the notebook, petitioner was arrested in Washington County, Ohio, upon charges of child endangerment and "pandering obscenity involving a minor."[3]

In April of 2018, the circuit court held an adjudicatory hearing during which the parents stipulated to the allegations contained in the petition. Specifically, petitioner admitted that she would benefit "from individualized counseling and other services so that she may be able to appropriately tend to the needs of the child." In May of 2018, the circuit court granted the parents post-adjudicatory improvement periods, the terms of which included participating in parenting and adult life skills classes as well as attending supervised visitations with the child. The parents were further required to attend individualized therapy sessions to address the sexual abuse allegations and to sign releases to allow the DHHR to access the parents' monthly reports from their therapy provider. Finally, the parents agreed to submit to a "psychological evaluation with a [multidisciplinary team] approved provider to determine any mental health diagnosis, to gain recommendations as to services that would benefit [them] and to gain knowledge on [their] ability to [parent] the child."

A DHHR provider submitted a summary in June of 2018 regarding petitioner's progress in individualized parenting sessions which stated that "[the parents] do not appear to take the appropriate amount of responsibility for their current situation." The next month, the DHHR submitted a court summary finding that petitioner had been compliant with the terms and conditions of her improvement period. Upon the recommendations made in the psychological evaluations and the DHHR's request, the circuit court ordered that the parents submit to a parental fitness evaluation by a review hearing scheduled in September of 2018. Later that month, petitioner submitted to that evaluation, during which she denied writing the sexually explicit conversations with her husband regarding her son until she was confronted by the evaluator. In response, petitioner claimed that she made the notebook entries to merely "appease" her husband. During her evaluation, when asked what she would do to protect the child, petitioner replied, "I don't know." Petitioner also denied drug use despite entries in the notebook that she abused drugs while pregnant with W.D. The evaluation included reports that the child exhibited signs of sexual abuse including "crying, distress, and covering [himself] during diaper changes" and that the child was developmentally delayed. Finally, the evaluator recommended that due to petitioner's dishonesty and defensiveness with the notebook's contents, it was unlikely that she would protect her son. The evaluator recommended that petitioner's visitations with the child "cease immediately" and her parental rights be terminated in light of

_____

it had jurisdiction to proceed under the Uniform Child Custody Jurisdiction and Enforcement Act. Petitioner does not challenge this ruling on appeal.

[3]Petitioner was ultimately convicted of one count of child endangerment and served sixty-seven days of incarceration before being released on probation during the course of the underlying proceedings.

the "information obtained and results of various assessments [that] the risk of abuse is too significant to warrant reunification."

In November of 2018, the DHHR submitted a court summary stating that petitioner had not accepted responsibility for her actions and initially denied making certain writings in the notebook. That same month, the DHHR filed a motion to terminate petitioner's improvement period citing the portions of her parental fitness evaluation where she denied writing the notebook entries then claimed that she wrote the entries only to appease her husband and that she did not know what she would do to protect the child. Upon the DHHR's motion to terminate petitioner's improvement period, the circuit court held a hearing in April of 2019 and heard the testimony of the psychologist who authored petitioner's parental fitness evaluation. Thereafter, petitioner filed a motion to have a parental fitness evaluation performed by an "alternate psychological evaluator." At a hearing held in October of 2019, the circuit court denied the motion, finding that there was no evidence that petitioner's parental fitness evaluation was "improper" and set the case for disposition.

In November of 2019, the guardian filed a report recommending the termination of petitioner's parental rights. Final dispositional hearings were held in November and December of 2019. The parents requested post-dispositional improvement periods. The DHHR moved to terminate the parents' parental rights and presented evidence that the parents had failed to complete the terms and conditions of their post-adjudicatory improvement periods. Specifically, the DHHR argued that although petitioner agreed to participate in counseling to address the allegations of sexual abuse, she failed to sign the required release of records regarding these sessions, leaving the circuit court and the DHHR blind to her progress. Petitioner testified that she attended individualized therapy sessions, albeit inconsistently, and learned that her substance abuse while pregnant was not safe for the child. She further claimed that she made the notebook entries because she was depressed but failed to explain how her depression would cause such writings. When asked what she would do to stop the father from sexually abusing the child, she answered that she would "tell him no and that she would pray and tell him to repent." After a brief recess, petitioner returned with a different answer—that she would leave the relationship with the father. Also, petitioner acknowledged that she never received treatment for the sexual abuse allegations but learned that her actions were wrong after going to church. Further, a DHHR provider testified that when petitioner attended individualized parenting sessions regarding sexual abuse, she became very defensive and unreceptive. The provider testified in the following exchange:

> [The DHHR]: How did [the parents] react when you would go over that [sexual abuse] material with them?
>
> [Witness]: [T]hey would want to defend or deflect the allegation, the notebook in and of itself, the writing they said was just writings. They didn't really demonstrate any responsibility or awareness of the negative impact that they would have had on a child.
>
> . . . .

> [The DHHR]: Did they acknowledge or believe that [W.D.] had deficits when he—prior to being taken into the [DHHR's] care?
>
> [Witness]: No. They believed that he had abilities that somehow disappeared during the time that he was placed.

At the conclusion of the December of 2019 dispositional hearing, the circuit court held the matter in abeyance. Ultimately, the circuit court denied the parents' motions for post-dispositional improvement periods, finding that they could not show a substantial change in circumstances. Further, the circuit court found that there was no reasonable likelihood that petitioner could correct the conditions of abuse and neglect in the near future and that termination of her parental rights was necessary for the child's welfare. The circuit court terminated petitioner's parental rights by order entered on January 7, 2020. It is from this dispositional order that she now appeals.[4]

The Court has previously established the following standard of review in cases such as this:

> "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011).

On appeal, petitioner first argues that the circuit court erred in denying her motion for another parental fitness evaluation to be performed prior to the final dispositional hearing. According to petitioner, her parental fitness evaluation was completed fifteen months prior to the dispositional hearing and a subsequent evaluation "would have provided the [circuit court] with a more complete picture of how the [p]etitioner had addressed and/or corrected the issues that were of concern in the original [parental fitness evaluation]." We disagree.

---

[4]The father's parental rights were also terminated below. According to the DHHR, the permanency plan for the child is adoption by his foster family.

4

West Virginia Code § 49-4-603(a)(1) provides as follows:

> At any time during proceedings under this article the court may, upon its own motion or upon motion of the child or other parties, order the child or other parties to be examined by a physician, psychologist or psychiatrist, and may require testimony from the expert, subject to cross-examination and the rules of evidence.

Here, it is undisputed that the DHHR complied with our holding in *In re: Chevie V.*, 226 W. Va. 363, 700 S.E.2d 815 (2010), that it must pay for and provide professional services, including parental fitness evaluations, for respondent parents such as petitioner herein. "Our holding in *Chevie V.* does not, however, stand for the proposition that petitioner may request multiple parental fitness evaluations merely because she may be unsatisfied with the outcome of the first parental evaluation." *In re J.B.*, No. 19-0581, 2020 WL 1674018, at \*3-\*4 (W. Va. Apr. 6, 2020)(memorandum decision). On appeal, petitioner presents no evidence that her parental fitness evaluation failed to provide the circuit court with accurate information regarding her ability to parent or whether she addressed the allegations of sexual abuse. Petitioner assumes that the passage of time alone is enough to require the circuit court to order a second parental fitness evaluation and fails to argue exactly how a second evaluation would have benefited the circuit court. As petitioner fails to support her claim that a second evaluation was warranted, we find no error in the circuit court's denial of her motion for a second parental fitness evaluation.

Petitioner next argues that the circuit court erred in denying her a post-dispositional improvement period. According to petitioner, the circuit court gave improper weight to the results of her parental fitness evaluation, which did not account for her progress in parenting classes and individualized therapy sessions. Further, petitioner points to her testimony that she did not know that her actions were wrong at the time of the filing of the petition but understood through therapy and church that her actions were wrong and would now protect the child from the father's sexual abuse. She argues that she "complied with services and changed her thought processes and behaviors as evidenced by her testimony at the dispositional hearing." According to petitioner, she showed sufficient progress and improvement to warrant the granting of another improvement period. Upon our review, we find that petitioner is entitled to no relief.

The decision to grant or deny an improvement period rests in the sound discretion of the circuit court. *See In re M.M.*, 236 W. Va. 108, 115, 778 S.E.2d 338, 345 (2015) ("West Virginia law allows the circuit court discretion in deciding whether to grant a parent an improvement period."); Syl. Pt. 6, in part, *In re Katie S.*, 198 W. Va. 79, 479 S.E.2d 589 (1996) ("It is within the court's discretion to grant an improvement period within the applicable statutory requirements . . . ."). We have also held that a parent's "entitlement to an improvement period is conditioned upon the ability of the [parent] to demonstrate 'by clear and convincing evidence that the respondent is likely to fully participate in the improvement period.'" *In re Charity H.*, 215 W. Va. 208, 215, 599 S.E.2d 631, 638 (2004). Lastly, West Virginia Code § 49-4-610(3)(D) provides that a circuit court may grant a parent a post-dispositional improvement period when

> [s]ince the initiation of the proceeding, the [parent] has not previously been granted any improvement period or the [parent] demonstrates that since the initial improvement period, the [parent] has experienced a substantial change in

circumstances. Further, the [parent] shall demonstrate that due to that change in circumstances, the [parent] is likely to fully participate in the improvement period.

Having reviewed the record, we find that the circuit court did not err in denying petitioner's request for a post-dispositional improvement period. Because petitioner was already granted a post-adjudicatory improvement period during the proceedings, she was required to demonstrate (1) a substantial change in circumstances and (2) that she was likely to fully participate in an improvement period. On appeal, petitioner fails to establish what substantial change of circumstances she experienced. Moreover, the overwhelming evidence set forth below demonstrates that petitioner was unlikely to fully participate in a post-dispositional improvement period given her failure to complete the most crucial term of her post-adjudicatory improvement period—individualized therapy and parenting sessions to address the allegations of sexual abuse. As the circuit court noted, petitioner failed to provide confirmation from her therapy provider to corroborate her testimony that she attended individualized therapy for over a year. Moreover, by petitioner's own admission, her participation in therapy was inconsistent. Also, when the parenting provider attempted to implement the sexual abuse curriculum, petitioner refused to participate. At the final dispositional hearing, petitioner's only alleged change in circumstances was that she learned that her actions were wrong and had "changed internally." The circuit court explained that it could not "determine whether this internal change ha[d] occurred, but [could] only look at the past and present conduct and behaviors of the respondent parents." The circuit court further noted that petitioner's parental fitness evaluation in which she initially denied making the writings in the notebook and answered that she did not know what she would do to protect the child, was submitted in September of 2018, well after the parents began attending church and claimed to know that their actions were wrong. We have previously held that failure to acknowledge the issues of abuse and neglect render an improvement period an "exercise in futility." *In re Timber M.*, 231 W. Va. 44, 55, 743 S.E.2d 352, 363 (2013) (citation omitted). Further, the circuit court found that petitioner's testimony lacked credibility. "A reviewing court cannot assess witness credibility through a record. The trier of fact is uniquely situated to make such determinations and this Court is not in a position to, and will not, second guess such determinations." *Michael D.C. v. Wanda L.C.*, 201 W. Va. 381, 388, 497 S.E.2d 531, 538 (1997). Based on petitioner's failure to comply with the most important terms of her post-adjudicatory improvement period and her failure to genuinely acknowledge the severity of her actions, we find no error in the circuit court's denial of her motion for a post-dispositional improvement period.

Petitioner's final assignment of error alleges that the circuit court erred in terminating her parental rights "as there was insufficient evidence to show [that petitioner] could not substantially correct the conditions which gave rise to the filing of the abuse and neglect petition." Additionally, petitioner claims that the circuit court failed to consider less-restrictive alternative dispositions. We find no merit in petitioner's argument.[5]

---

[5]Within this assignment of error, petitioner inserts a single sentence alleging that the circuit court's denial of her request for post-termination visitation was not in the child's best

(continued . . . )

6

West Virginia Code § 49-4-604(c)(6) provides that circuit courts are to terminate parental rights upon finding that there is "no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected in the near future" and that termination is necessary for the child's welfare. West Virginia Code § 49-4-604(d)(3) provides that a situation in which there is "[n]o reasonable likelihood that [the] conditions of neglect or abuse can be substantially corrected" includes when the abusing parent has

> not responded to or followed through with a reasonable family case plan or other rehabilitative efforts of social, medical, mental health, or other rehabilitative agencies designed to reduce or prevent the abuse or neglect of the child, as evidenced by the continuation or insubstantial diminution of conditions which threatened the health, welfare, or life of the child.

The record demonstrates that there was no reasonable likelihood that petitioner could correct the conditions of abuse and neglect in the near future. As shown above, the evidence established that petitioner failed to meaningfully participate in and complete court-ordered sexual abuse counseling and therapy. Further, petitioner's failure to sign the required release of records for the therapy sessions resulted in the DHHR's inability to confirm that petitioner

_____

interest. However, petitioner failed to cite to a single case or the appendix record in support of this assertion. These failures are in direct contradiction of Rule 10(c)(7) of the West Virginia Rules of Appellate Procedure requiring that

> [t]he brief must contain an argument exhibiting clearly the points of fact and law presented, the standard of review applicable, and citing the authorities relied on, under headings that correspond with the assignments of error. The argument must contain appropriate and specific citations to the record on appeal, including citations that pinpoint when and how the issues in the assignments of error were presented to the lower tribunal. The Court may disregard errors that are not adequately supported by specific references to the record on appeal.

Additionally, in an Administrative Order entered on December 10, 2012, Re: Filings That Do Not Comply With the Rules of Appellate Procedure, this Court specifically noted that "[b]riefs that lack citation of authority [or] fail to structure an argument applying applicable law" are not in compliance with this Court's rules. Further, "[b]riefs with arguments that do not contain a citation to legal authority to support the argument presented and do not 'contain appropriate and specific citations to the record on appeal . . .' as required by rule 10(c)(7)" are not in compliance with this Court's rules. *Id.* "A skeletal 'argument,' really nothing more than an assertion, does not preserve a claim. . . . Judges are not like pigs, hunting for truffles buried in briefs." *State v. Kaufman*, 227 W. Va. 537, 555 n.39, 711 S.E.2d 607, 625 n.39 (2011) (citation omitted). Because petitioner's brief with regard to this assertion is woefully inadequate and entirely fails to comply with Rule 10(c)(7) of the Rules of Appellate Procedure, we decline to address this issue on appeal.

participated in therapy as directed and constituted a lack of compliance with the terms and conditions of her improvement period. The DHHR also presented evidence that petitioner had not accepted responsibility for any wrongdoing and that she believed the child had not been harmed. Accordingly, the evidence demonstrates that petitioner failed to respond to or follow through with rehabilitative services designed to reduce or prevent the abuse and neglect of the child. Based on the foregoing, it is clear that there was no reasonable likelihood that petitioner could correct the conditions of abuse and neglect and that termination was necessary for the child's welfare.

While petitioner claims that she should have been granted a less-restrictive dispositional alternative other that the termination of her parental rights, we have previously held that

> "[t]ermination of parental rights, the most drastic remedy under the statutory provision covering the disposition of neglected children, [West Virginia Code § 49-4-604] may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood under [West Virginia Code § 49-4-604(d)] that conditions of neglect or abuse can be substantially corrected." Syllabus point 2, *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980).

Syl. Pt. 5, *In re Kristin Y.*, 227 W. Va. 558, 712 S.E.2d 55 (2011). Accordingly, the circuit court's findings are fully supported by the record below, and we find no error in the termination of petitioner's parental rights.

For the foregoing reasons, we find no error in the decision of the circuit court, and its January 7, 2020, order is hereby affirmed.

Affirmed.

**ISSUED**:  September 3, 2020

**CONCURRED IN BY**:

Chief Justice Tim Armstead
Justice Margaret L. Workman
Justice Elizabeth D. Walker
Justice Evan H. Jenkins
Justice John A. Hutchison